NBLAAABDC                        Conference

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                           20 CR 677 (AT)

5    CHOLO ABDI ABDULLAH,

6              Defendant.

7    ------------------------------x

8                                     New York, N.Y.
                                      November 21, 2023
9                                     9:00 a.m.

10
     Before:
11
                        HON. ANALISA TORRES,
12
                                      District Judge
13

14                        APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     DAVID DENTON
17   NICHOLAS BRADLEY
          Assistant United States Attorneys
18
     SABRINA SHROFF
19        Attorney for Defendant Abdullah

20   KARL COMMISSIONG
          Attorney for Defendant Abdullah
21

22

23

24

25
```

1          (Case called)

2          THE COURT:  We're here in the matter of United States

3   versus Acholo Abdi Abdullah.

4          Would you make your appearances, please?

5          MR. DENTON:  Good morning, your Honor.

6          David Denton and Nicholas Bradley, for the government.

7          MS. SHROFF:  Good morning, your Honor.

8          On behalf of Mr. Abdullah, who is standing to my

9   right, Sabrina Shroff.

10         THE COURT:  Please be seated.  We are here for a

11  status conference.

12         Ms. Shroff, would you tell me how Mr. Abdullah wishes

13  to proceed.

14         MS. SHROFF:  Your Honor, best I can garner,

15  Mr. Abdullah would like to address the Court directly about the

16  next steps that he wishes to take.  It is just that it was he

17  has directed me to tell the Court.  I will note that, if I

18  could just note thee things.  One is I did not know that he is

19  not getting his, I did not know, partially because of how the

20  MDC is set up and partially because I have also been at trial

21  since November 1st, that Mr. Abdullah is not getting his phone

22  calls to his family members which he is supposed to get to the

23  increased amount as the Court had previously ordered.  So I've

24  asked Mr. Denton to please make sure that that does not lapse.

25  That should happen as a norm because that is the one thing that

NBLAAABDC                    Conference

1  is most important to Mr. Abdullah and it also contributes to

2  wellbeing for a human being to be in touch with their family

3  members.

4          I also had provided for him a subscription to "The

5  Economist" so that there is some reading material.  He's also

6  not getting that.  Apparently, has hasn't gotten it for the

7  last week.  I've asked Mr. Denton to look into that as well.

8          Finally, as to how he wishes to proceed, it's

9  Mr. Abdullah wish to address the Court directly and as long as

10 he is not talking about the facts, I think that it's fine for

11 Mr. Abdullah to let the Court know what his wishes are.  It is,

12 after all, his case and his life.  Should I feel that something

13 is awry in terms of the government taking an, not an unfair

14 advantage or an advantage of something he says, of course, I

15 can cut him off and address the Court.  But just to be most

16 cautious, if the Court wishes to inquire about how he wishes to

17 proceed and what his thoughts are, perhaps the Court could

18 excuse the government, let me Abdullah speak to the Court ex

19 parte and then, of course, the Court can decide on a cold

20 transcript if the transcript should be released to the

21 government.

22          That is the most prudent way of proceeding.  That way

23 Mr. Abdullah can communicate to the Court whatever his concerns

24 are, be they unhappiness with me or the system or whatever it

25 is and the government would not be disadvantaged because the

NBLAAABDC                    Conference

1    Court could, of course, down the road order the transcript be

2    made available to them.  To me that would be the safest way to

3    proceed.  It would protect Mr. Abdullah's right to speak to the

4    Court and not have anything he said held against him.

5            THE COURT:  This is what I'm going to do.  I'm going

6    to ask some initial questions and depending on how those

7    questions are answered by Mr. Abdullah, I will invite the

8    government to return.  Just for a short while I'm going to ask

9    them to step out.

10           MR. DENTON:  Yes, your Honor.

11           (Government not present)

12           MS. SHROFF:  I'm assuming that the person in the back

13   row is from the Court staff.

14           UNIDENTIFIED WOMAN:  I'm a student.

15           THE COURT:  A law student?

16           UNIDENTIFIED WOMAN:  Undergrad.  I am taking a law

17   class.  I've been assigned to -- proceeding.

18           MS. SHROFF:  I would ask her to step out.

19           THE COURT:  There's also a member of the press here.

20           MS. SHROFF:  Your Honor, on behalf of Mr. Abdullah, I

21   would ask them to step out.  I don't think these matters

22   concern, they're matters of representation and they are of a

23   personal nature.  I don't mean to close the courtroom.  Of

24   course the transcript down the road can also be made available

25   to them but I don't see any reason for Mr. Abdullah's personal

1   issues to be aired but that's just my position.  Either way is

2   fine.  It's not a legal proceeding in the sense the Court is

3   inquiring about matters of what's going on for him at the MDC

4   on the SAMS unit and how he wishes to proceed.

5          THE COURT:  My inquiry is really just related to his

6   legal representation at this point.

7          MS. SHROFF:  Right.  But I'm obviously noting the

8   presence of Inner City Press.  I asked the government to step

9   out so that what he said not held against him.  It is the

10  press's right of course to if they put on Twitter exactly what

11  he is going to say.  It sort of defeats the purpose of me

12  asking the government to step out.

13         THE COURT:  I'm not sealing the transcript.  I'll just

14  ask momentarily for the two of you to step out.

15         (The student and press member have left the courtroom)

16         MS. SHROFF:  Thank you, your Honor.

17         THE COURT:  All right then.  Mr. Abdullah, did you

18  want to continue with Ms. Shroff as your attorney?

19         THE DEFENDANT:  No.

20         THE COURT:  Okay.  You're looking to be assigned a new

21  attorney?

22         THE DEFENDANT:  Your Honor, that is the problem

23  because you know very well that I have the capability of

24  representing myself.  My only problem is that I don't have any

25  confidence in the public authorities.  If I was wealthy enough

1      to hire lawyers there would be no problem but my problem now is

2      I believe that the public defenders and the prosecutors are one

3      and the same.  That is the problem that I have for now.

4              Also, the reason that I did that, I told her or the

5      lawyers, other lawyers that I don't want to represent me.  I

6      don't care about race, about the black people, white people,

7      Asians.  I don't care.  I believe everyone is human.  My

8      problem is, and this the only problem, is that I believe that

9      the public defenders and the government are one and the same

10     and they are working against me.  According to my knowledge

11     having the legal representation -- is not supposed, it's

12     supposed to be unconditional.  Now for me to have a lawyer I

13     have to fulfill some conditions that is not within my

14     capabilities or something that would put me in much more

15     difficulty than I'm in right now.

16             This is the main problem, your Honor.

17             THE COURT:  So, I can tell you that the attorneys that

18     have been assigned to you are independent of the government but

19     that might not change your belief and if you don't take me at

20     my word then I have to ask a very lengthy series of questions

21     to you.

22             I understand you to be saying that because you cannot

23     afford to get another attorney, a private attorney, that you

24     want to represent yourself; is that correct?

25             THE DEFENDANT:  I already tell you what I said before.

NBLAAABDC                    Conference

```
 1   I will reiterate what I said before, that you know very well
 2   that I don't have capabilities of representing myself.  My
 3   decision is after thinking, let the government put on the -- I
 4   want them to win unopposed.
 5           MS. SHROFF:  "I want the government to win unopposed".
 6           THE DEFENDANT:  That is my decision because this is
 7   something that is done where it is unfair.  And I tell you,
 8   your Honor, you give me any lawyer, you want give me the lawyer
 9   from my tribe right now who is going to be a public defenders,
10   we are going to waste time.  Always come to court, complain
11   about the lawyers because for me I don't think about today.  My
12   think is about my future because if I'm going to agree to what
13   they want, then I'm going to jeopardize my future.  The reason
14   that I want and I would like the Court to respect my decision
15   is just let them do what they do.  Let me get what I get and
16   but not coming here and fooling myself that I am
17   well-represented where it's the contrary.
18           THE COURT:  Okay.  I understand what you are saying.
19   You think that this is all a pretense, that essentially that
20   you don't have a lawyer, that the only thing that you have is a
21   prosecution that opposes you and an attorney that opposes you.
22   That's my understanding of what you are saying.
23           THE DEFENDANT:  That's correct.
24           THE COURT:  Okay.  Well, you may have that belief but
25   I'm also constrained by certain laws and rules that govern what
```

1    goes on inside of a courtroom.  And although it may be your

2    wish to proceed that way, that's not the way that our system

3    works.  I'm going to ask the government to return and I am

4    going to be asking a number of questions to you and we will go

5    forward.

6              MS. SHROFF:  Your Honor, may I?

7              THE COURT:  Yes.

8              MS. SHROFF:  Thank you.

9              I did want the Court to know that I dropped off the

10    government's November 3rd letter to the Court for Mr. Abdullah

11    at MDC.  It is my understanding that he has not received it,

12    nor has he read the further inquiry.  I just is wanted to flag

13    that for the Court.  I don't know if you wanted him to have

14    time to review it.

15              THE COURT:  I'm going to go through all of that.

16              Mr. Abdullah, essentially, the position that you would

17    be in would be that you would be representing yourself.

18              THE DEFENDANT:  You know, according to my

19    understanding I don't know anything about the laws about the --

20    but if you ask me about the -- law I now very well.  But

21    according to about the other laws, I don't know anything

22    according to my understanding, the general understanding that

23    this is not my first court.  I went through the trial in

24    Philippines where I have a lawyer.  I don't have a problem with

25    the lawyers and I don't have a problem what the headquarters

1    and or the Court.  The trial well went and I won the case in

2    Philippines.  The problem here is after many days of

3    observation is that even if I will do what the government

4    wanted me to do I will just jeopardize my life, my future.  The

5    problem is that these lawyers they are going to be provided by

6    the Court according to my understanding which is I don't know

7    anything about the law is, it's just a law, a right and I can

8    take it or I can waive it.  It's why I wanted to waive this

9    right.  Like for example, the right --

10         THE COURT:  But do you intend to challenge the

11   evidence that is put forward by the prosecution?  Do you want

12   to call witnesses?

13         THE DEFENDANT:  I am going to, I mean just like I told

14   you, I want the government to win unopposed.

15         THE COURT:  Are you saying that the government will

16   put on its case and that you would remain completely quiet and

17   do nothing?

18         THE DEFENDANT:  That's correct.

19         MS. SHROFF:  Your Honor, may I?  I'm sorry, but do you

20   think it would be possible for Mr. Abdullah to have like some

21   kind of feedback on that not being wise for him?  I know this

22   is not a classified setting.  I'm happy to explain it to the

23   Court in a classified setting but I also just point out

24   something very basic about the indictment.  There's a mandatory

25   minimum in this case.

NBLAAABDC                    Conference

1          THE COURT:  Are you asking me to allow him to have a

2    conversation now with standby counsel?

3          MS. SHROFF:  No.  I'm asking Mr. Abdullah if he wants

4    to take a minute and just think about it.  I don't want to

5    speak for him any more because he wants to have his own voice.

6    I just want to make sure he knows some of the other options

7    available to him.  For example, he says he wants the government

8    to win unopposed.  I want to make sure that Mr. Abdullah

9    understands that one way, another way for him to not be

10   disadvantaged is the word I might reach for, is for him to

11   engage in plea negotiations with the government, right?  When

12   somebody says they want the government to win unopposed, they

13   may not know or they may have forgotten that there is such a

14   thing as plea negotiations with the United States government.

15   He can engage in those plea negotiations on his own behalf and

16   I can advise him or someone can advise him as to how to

17   negotiate those.  The option isn't for him to go through a

18   trial and have himself just sitting there because that would

19   expose him completely to the mandatory minimum of 20 and a

20   maximum of life.  So, there are other options available to him.

21          And he is also not the first client who's felt this

22   way.  I think there are other clients for whom we've just tried

23   the case and the person has chosen not to participate.  The

24   case was before Judge Garaufis.  But I just want to make sure

25   Mr. Abdullah has these options and I want to say them in open

1    court so that there is some degree of verification that he has

2    because if I'm wrong, of course, the Court would correct me.

3    If there's no such thing as plea negotiations or if there's no

4    such thing as allowing a lawyer to try the case without

5    participating that much and willfully not participating, what

6    I'm saying is these options are out there and I'm saying them

7    out loud not because I haven't -- not -- for no other reason

8    other than you could correct me in his presence if I'm wrong.

9            Does that make sense?

10            THE COURT:  Yes.  I understand what you are saying but

11    there are options other than taking a completely passive role

12    which is what he is now suggesting.

13            MS. SHROFF:  Right.  Perhaps I could flesh it out more

14    factually for him but I don't think it's needed right now.

15            THE COURT:  But my understanding is that he may have

16    lost faith in you.

17            MS. SHROFF:  It doesn't have to be me.  It can be

18    anybody.  Whoever he has faith in.  That's fine.  I'm really

19    sorry he has lost faith in me because I personally can't

20    imagine ever siding with the prosecutors.

21            THE COURT:  That's certainly unimaginable to me too.

22            MS. SHROFF:  He is entitled to have somebody by his

23    side that he trusts and he likes and he has confidence in.  If

24    that's not me, fine.  But somebody has to put their hand out

25    when the car brakes, right?  Otherwise, it's not good for

1    Mr. Abdullah.  And Mr. Abdullah, I want to make sure, is aware

2    of all of his options which would also include negotiating a

3    plea.

4         I have done several standby cases including a

5    terrorism case involving CIPA and all of those things.

6    Mr. Abdullah would have the right to be in a SCIF, for example,

7    pick up the phone, to the talk to the government, engage.  I

8    just want to make sure he knows.

9         In United States versus Schulte, when Mr. Schulte

10    decided to go pro se he had that option.  I want to make sure

11    Mr. Abdullah knows that he had that option.  If I'm not the

12    lawyer for him on standby the next lawyer may not know of all

13    of these options available to him but I am confident --

14         THE COURT:  I believe that any lawyer would know of

15    those options, Ms. Shroff.

16         MS. SHROFF:  No, no.  I meant from the SCIF.  I didn't

17    mean anything general.  I know that Mr. Hartenstine would

18    arrange those things for Mr. Abdullah, that he would have

19    access to the SCIF, he would have access a secure line on a

20    phone, be able to negotiate and interact with the government.

21    What I'm saying is just in the classified context he should

22    know those options.

23         THE COURT:  Just so that you know, Mr. Abdullah, I

24    can't conduct a trial where you are just sitting by yourself

25    quietly and the prosecution is putting on its case.  I'm not

1    permitted to do that.  At a minimum I would have to appoint for

2    you a lawyer who would be an adviser to you.  That attorney

3    could advise you as to what you can do if you want to represent

4    yourself or that attorney can take on the representation, but

5    you would have to decide at the very beginning.  Now you would

6    have to decide what role that person is going to take.  This

7    proposal of yours is not feasible.  It's not feasible.  I would

8    not be following the law if I did that.

9            THE DEFENDANT:  Can I speak?

10           THE COURT:  Yes.

11           THE DEFENDANT:  I would like her to clarify what she

12   say right now about the plea guilty.  It will never happen, not

13   today or not the future about pleading guilty or offer, it will

14   never happen.  I must be guilty or I must be admitting to what

15   I did something I never did, that will never happen.  You put

16   it aside.

17           First of all, I don't, my case with the Court, with

18   you to be like this.  I want everything to be smooth.  But now

19   we're in the situation that I'm not talking out of madness.  I

20   am thinking this, thinking over it for almost three years now.

21   I was here before with the other lawyers and I told you, your

22   Honor, don't be surprised if we come back here to again

23   complain about the lawyers.  But I know they will behave like

24   that because of the nature of my case there's no one who will

25   accept who will accept me and this, I never did it because

1    she's, I believed I don't know or white people.  I don't care

2    about the being.  What I care is about you human beings if they

3    give me representation whether it's white, whether it's blue, I

4    don't care.  But the problem is what I told the Court right now

5    about laws, that they're lawyers, they are one and the same

6    with the government.  It's something I truly do believe.

7              THE COURT:  I understand.  You believe that the

8    lawyers are not representing you --

9              THE DEFENDANT:  Yes.

10             THE COURT:  -- that they are in favor of the

11   prosecution.  I understand that and I might not be able to

12   convince you otherwise.  However, what I cannot have is a

13   circumstance where you're simply sitting by yourself in the

14   courtroom.  At a minimum I have to appoint someone who can

15   advise you, at a minimum.

16             THE DEFENDANT:  Your Honor, what I was thinking is I

17   would elect, for example, if you are going with elect and you

18   have a right to vote, you have a right to -- with receipt and

19   if you find that that candidate is asking about going to be the

20   elect is going to be unfair, then you have to, you let your

21   opponent win unopposed today.  This is a the analogy that I

22   used.

23             THE COURT:  Yes.  You are saying that it is your

24   belief that sitting here that you can merely waive this right

25   and conduct yourself in the way that you propose, which is to

NBLAAABDC                    Conference

1    be solitary while the prosecution puts on its case without any

2    help of an attorney but I'm saying that you can't do that.  You

3    have to at least have at a minimum somebody who is there

4    sitting beside you who can advise you.  That doesn't mean you

5    have to take their advice but as a matter of law, I would have

6    to appoint someone that you can turn to if you want to.

7               Do you understand?

8               THE DEFENDANT:  I understand.

9               MS. SHROFF:  Your Honor, I have to confess -- and I

10   say this only because I am tasked with making sure that

11   Mr. Abdullah gets what he wants -- I'm not entirely sure that

12   he doesn't have the absolute right to proceed in a manner that

13   he is describing.  I may have to research it a bit but,

14   unfortunately, I think that he may have that right.  I just

15   don't know.  I'm not sure.  I just don't know.

16              THE COURT:  I am going to take a pause.

17              MS. SHROFF:  Okay.

18              (Recess)

19              THE COURT:  I will ask the government to return.  You

20   may be seated.

21              MS. SHROFF:  Your Honor, I did check the case law.  It

22   is completely within the Court's discretion to appoint

23   Mr. Abdullah standby counsel and Mr. Abdullah has the option of

24   either using or not using standby counsel.

25              (Government is present)

1          THE COURT:  Mr. Abdullah had stated that he believes

2     that it is not in his interest to be represented by an attorney

3     and he wants to not only be without an attorney but he does not

4     want to represent himself pro se.  He wants to merely sit

5     passively during the trial, not oppose the prosecution and

6     whatever the outcome, he would accept the outcome because he

7     does not believe that this is a legitimate system.

8          I am going to ask some questions of Mr. Abdullah.  All

9     right?

10          Mr. Abdullah, am I correct that your position is that

11    you do not want to participate in the trial either represented

12    by a lawyer or representing yourself?

13          THE DEFENDANT:  That's correct.

14          THE COURT:  All right.  I'd like the law clerk please

15    to swear Mr. Abdullah.

16          (Defendant Abdullah sworn)

17          THE COURT:  Please be seated.  Just to repeat,

18    Mr. Abdullah, it is your position that you do not want an

19    attorney; is that correct?

20          THE DEFENDANT:  Correct.

21          THE COURT:  And you do not want an attorney adviser;

22    is that correct?

23          THE DEFENDANT:  Yes, that's correct.

24          THE COURT:  And that you will not be acting as your

25    own attorney representing yourself; is that correct?

1                THE DEFENDANT:  Yes.

2                THE COURT:  And that you would merely sit in the

3     courtroom passively; is that correct?

4                THE DEFENDANT:  Yes.

5                THE COURT:  And that you would not oppose the

6     prosecution; is that correct?

7                THE DEFENDANT:  Yes.

8                THE COURT:  The Sixth Amendment provides a criminal

9     defendant with the right to counsel, and I need to tell you

10    about that right.

11               You can waive your right to counsel but there are

12    certain requirements that must be met.  Your waiver must be

13    knowing, intelligent and voluntary and it has to be timely.

14               My understanding hearing you today is that you have

15    expressed your desire not to have an attorney, not to have

16    standby counsel, not to oppose the prosecution.  You've

17    expressed that clearly.  But I want you to understand what is

18    at stake.  You are at a tremendous disadvantage proceeding

19    without an attorney.  There are six very serious charges

20    including one count of conspiring to provide material support

21    to a foreign terrorist organization in violation of 18 U.S.C.

22    Section 2339B; one count of providing material support to a

23    foreign terrorist organization also in violation of 18 U.S.C.

24    section 2339B; one count of conspiring to murder U.S. nationals

25    in violation of 18 U.S.C. Section 2332; one count of conspiring

NBLAAABDC                    Conference

to commit aircraft piracy in violation of 49 U.S.C. Section

46502; one count of conspiring to destroy aircraft in violation

of 18 U.S.C. Section 32; and one count of conspiring to commit

acts of terrorism transcending national boundaries in violation

of 18 U.S.C. Section 2332b.

        The maximum term of imprisonment for all six counts is

life imprisonment with a mandatory minimum term of 250 years

imprisonment.

        Do you understand that?

        THE DEFENDANT:  Yes.

        THE COURT:  Pretrial, trial and post trial proceedings

can be complex.  They involve legal work and require

familiarity with the Federal Rules of Criminal Procedure and

the Federal Rules of Evidence.  It is better to have this work

performed by an attorney, particularly, a lawyer specializing

in criminal defense because a lawyer is trained, has special

knowledge of and experience with the substantive and procedural

rules of law and of this Court.  And there will be serious

consequences if you have no defense, it is a good idea for you

to have a lawyer, but the choice of whether to continue with a

lawyer is yours.  As long as you make that choice

intelligently, knowingly and in a voluntary fashion with the

proper understanding of what is at stake.  I'm only trying to

ensure that you make an informed decision.  The decision you

make is your own.

1          Third and finally, timeliness, if you make the choice

2     today, it will be timely because we are still in the pretrial

3     phase of the case, but I want you, for the future you do not

4     have the right to manipulate the Court.  You must think hard

5     before making a final decision because it will have an ongoing

6     significance for you.

7          Do you understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you decide that you do not want to have

10    a lawyer and that you are going to sit passively not

11    participating in any of the discovery or in the trial, then you

12    later ask for a lawyer or ask to serve as your own lawyer, if I

13    conclude that you are acting in bad faith in trying to delay

14    the case, I may deny the request.  This is an important moment

15    in the case and you have a very important decision, final

16    decision to make.

17         Do you understand?

18         THE DEFENDANT:  Yes.

19         THE COURT:  If you finally decide that you don't want

20    any help from any attorney, I am still going to appoint what is

21    known is standby counsel and you can cooperate with that

22    individual and control the presentation of your case.  What

23    that will allow though is for you to have an attorney to

24    explain to you the details of courtroom protocol and the rules

25    of evidence and procedure.

1          Standby lawyer will be there to help you, to consult

2     with you about investigating the facts under the law, to

3     identify possible defenses and to suggest appropriate motions

4     to file.  I want you to understand that even if you don't

5     cooperate with standby counsel, that attorney is going to go

6     forward in advancing your interests at the pretrial stage.  You

7     don't have the right to reject standby counsel.

8          Do you understand?

9          THE DEFENDANT:  I understand what you said, but I mean

10    that part of, I don't have right to reject a stand by lawyer, I

11    have a problem with that one because according to my

12    understanding it is a right.  I can take it or I can leave it.

13         THE COURT:  I understand that is the way that you

14    believe the system works.  What I'm saying is that you're

15    wrong.  You are mistaken.

16         THE DEFENDANT:  Understand.

17         THE COURT:  You can at any point decide to cooperate

18    with the standby counsel.

19         THE DEFENDANT:  You know, she just asked an expert

20    right now and expert tell that it is not my -- to have a lawyer

21    but it's according to the Court's discretion.  It is your

22    discretion to give me a lawyer or to remain.  It is your

23    discretion to accept my, to accept what I say or you can

24    decline, but it is not mandatory that I must have a lawyer.

25    According to what she asked an expert.

NBLAAABDC                    Conference

1          You can explain.

2          THE COURT:  What Ms. Shroff is saying is that the

3    ultimate decision lies with me as to whether you get standby

4    counsel, and I am telling you right now my decision is that I

5    am going to assign standby counsel.  I understand that that's

6    not what you want but that's what I'm going to do.

7          (Pause)

8          THE DEFENDANT:  Your Honor, now, you have returned all

9    of everything.

10         THE COURT:  What?

11         THE DEFENDANT:  What you say right now have returned

12   me to the original position because if now it is must that I

13   have lawyer.  I must have a lawyer, then why should I not have

14   a lawyer?

15         MS. SHROFF:  He said you've returned me to the

16   original position.

17         THE COURT:  Well, it is not the same position.

18   Standby counsel is going to be there for you to use during the

19   first part of this proceeding which is the discovery phase.

20   The standby counsel will be in touch with you, will be making

21   suggestions to you as to how evidence should be treated

22   especially considering that we have classified information

23   involved in this case.  The standby counsel will be reviewing

24   that classified information which you're not permitted to see

25   and will be discussing how to go forward.

1         MS. SHROFF:  I'm sorry, your Honor.  Mr. Abdullah is

2    permitted to see the classified information.  He and I have

3    actually met in the SCIF.  I just wanted the Court to know

4    that.

5         THE COURT:  The attorney will be making suggestions as

6    to what motions you should be making and will make those

7    motions on your behalf if you should decide to take a passive

8    role.  And then when it comes to trial, the attorney would be

9    sitting here in court and advising you as to what should be

10   done and you can take that advice or not take that advice.  But

11   I am not going to permit you to do what it is that you are

12   contemplating, which is to go completely without any form of

13   legal advice.  That, I'm not going to do.

14        THE DEFENDANT:  My intention is not to prolong this

15   decision but I think that you have not understood what I said

16   because you've mentioned right now a motion that I have to

17   fight or the case that I have to fight and I told you that I am

18   not going to fight anything.

19        THE COURT:  I understand that.

20        THE DEFENDANT:  What the point of having a lawyer who

21   is going to help you with motion where I am not going to fight

22   any motions?

23        THE COURT:  The lawyer is going to contact you and

24   make recommendations to you and even if you are not in

25   agreement, the lawyer can file motions on your behalf.

1          MR. DENTON:  Your Honor, if I may?

2          THE COURT:  Yes.

3          MR. DENTON:  I think to the extent that Mr. Abdullah

4     elects to control his defense, which I think would be an

5     exercise of his rights to proceed pro se, if his wish is to

6     proceed passively, that is just an exercise of how he chooses

7     to use that right and represent himself, I'm not sure whether

8     in that context it would be appropriate for standby counsel to

9     file motions to which he has objected or that he does not wish

10    to have filed.  I think if he wishes to be represented, then

11    that is obviously fine.  To the extent that he wishes to

12    proceed pro se and in exercising that right do nothing, I'm not

13    sure whether standby counsel could override that decision.

14         MS. SHROFF:  Your Honor, I most respectfully ask the

15    Court to allow us time to look into this.  I believe Mr. Denton

16    has taken that position in other cases.  And the government has

17    actually opposed motions that we've filed or letters we've

18    written saying that standby counsel has overridden or navigated

19    the defense against the defendant's own wish.

20         I worry, given Mr. Denton's recitation now, that that

21    is what will happen with Mr. Abdullah as well.  I'm happy to do

22    the research and let Mr. Abdullah and the Court know, but he

23    has taken that position and unfortunately, I have been at the

24    losing end of that one.

25         So, I just wanted the Court to know that that was in

1    United States versus Schulte.

2              THE COURT:  Look --

3              THE DEFENDANT:  Your Honor, I understand what you

4    say --

5              THE COURT:  One moment, sir.

6              To the extent that standby counsel wants to litigate

7    that issue, that's fine.

8              THE DEFENDANT:  Your Honor, let me finish this pattern

9    for once and for all.  You say that it is best I have a lawyer.

10   Instead of having a standby lawyer I am going to take a lawyer

11   right now.  I am going to accept the lawyer who is here, the

12   new lawyer and as a full lawyer, not as a standby lawyer.  It

13   was not according to what I was thinking now but I have to deal

14   with him first and then to see whether we can go forward or we

15   just return to the same position that we are in right now.

16             THE COURT:  Now you are changing your mind and you are

17   saying that you would prefer to have an attorney?

18             THE DEFENDANT:  Because according to what you just

19   stated is that I don't have any right to waive any kind of

20   lawyer.  I don't have right to waive the right of legal counsel

21   in its complete sense but I must have a lawyer that is going to

22   be a standby lawyer who is going to be, I can't activate my

23   case saying that I don't want it.  If you just right now accept

24   that I become passive in this case, then I'm not going to take

25   a lawyer.  But if you are going to say that it is must, that I

NBLAAABDC                    Conference

1   must have standby lawyer, then I prefer to have a full lawyer.

2              THE COURT:  Okay.  What I am going to do is I am going

3   to afford you a moment to consult with the individual that is

4   here in the courtroom who is available to represent you.

5         Ms. Shroff, my understanding that your relationship

6   with the defendant has broken down to the point where you

7   cannot mount an effective defense.

8              Is that correct?

9              MS. SHROFF:  That is Mr. Abdullah's position.  He has

10  asked me to not be his lawyer any more and I am happy to stay

11  his lawyer.  I'm happy to be relieved.  I mean whatever the

12  Court directs, I am perfectly fine doing.  Some judges leave us

13  on.  Some judges relieve us.  I'm the third lawyer.  If he is

14  open to having the lawyer in the courtroom represent him, I

15  think that would be best for Mr. Abdullah.  I really do think

16  that.  So, whatever he wants.

17             THE COURT:  Mr. Abdullah.

18             THE DEFENDANT:  I told Ms. Shroff I don't want her to

19  be my lawyer today or even in the future.

20             THE COURT:  All right.  You've made yourself clear.  I

21  am going to appoint then Mr. Commissiong as your attorney and

22  I'm going to afford you some time to speak in the back with

23  Mr. Abdullah and then we will recommence.

24             I under you have another proceeding, Mr. Commissiong

25             MR. COMMISSIONG:  I don't have another proceeding.

NBLAAABDC                      Conference

1              THE COURT:  Okay.  I am going to afford you some time

2       to talk and then we are going to reconvene.

3              MS. SHROFF:  Your Honor, you don't need me?

4              THE COURT:  You are relieved.

5              (Recess)

6              THE COURT:  Mr. Abdullah, I want to clarify something.

7              I was thinking about a case in the past where the

8       defendant refused to speak with the standby counsel and the

9       standby counsel made motions that essentially went unopposed.

10      Essentially, because there was no communication, the defendant

11      in that case was silent and those motions were permitted.  But

12      to the extent that you opposed, affirmatively oppose something

13      that is proposed by standby counsel, standby counsel would not

14      be taking that action.

15              THE DEFENDANT:  Say it again.

16              THE COURT:  Okay.

17              THE DEFENDANT:  The last part.

18              THE COURT:  If your standby counsel contacts you and

19      says 'I recommend that I take certain action in this case' and

20      you say 'don't do it', then the lawyer cannot do it.  If you

21      remain silent, for example, if you don't answer the calls, you

22      refuse to have any contact, if you are in communicata, then the

23      lawyer can go forward and take the actions that he believes are

24      proper.

25              THE DEFENDANT:  I understand what you mean.

NBLAAABDC                    Conference

1      THE COURT:  My understanding is that you do want to

2  continue with Mr. Commissiong as your attorney.

3      THE DEFENDANT:  Which we, I talked to him.  He will be

4  standby lawyer.  I already talked to him.

5      THE COURT:  Okay.

6      THE DEFENDANT:  I am willing to accept what you are

7  saying.  I am going to agree him as my standby lawyer and I am

8  going to proceed as representing myself.

9      THE COURT:  You want to represent yourself?

10     THE DEFENDANT:  Like the only option I have right now

11  is to have a standby lawyer according to what you say here and

12  you represented to me many times.  This is something that I

13  agree because I don't have any other choice.  I already spoke

14  to him and I apologize for giving you contradicting things but

15  after I spoke to him and then I decided that he will be staying

16  as standby lawyer because this is the only option that I have

17  right now.

18     THE COURT:  All right.  I think I want to go over with

19  you what your options are.

20     You can have him as your lawyer and you certainly

21  would be extremely lucky because he is a very, very fine

22  attorney.  And of course, that is what I would recommend

23  because you're at a disadvantage if you have no lawyer.

24     He can serve as your standby attorney and you can

25  represent yourself.  In other words, in the courtroom you would

NBLAAABDC                    Conference

1   be asking the witnesses questions.  You would make objections

2   if you believed that certain evidence was inadmissible or

3   certain testimony that's been given is inadmissible, for

4   example, on hearsay grounds, you can represent yourself.  That

5   standby attorney is in a passive role making suggestions to you

6   but that attorney cannot take over the examination of the

7   witness.  That attorney cannot make legal arguments in court.

8   They simply have a backseat role of adviser to you.  That's one

9   arrangement.

10          Is that the arrangement that you want?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.

13          THE DEFENDANT:  Can you repeat your question please?

14          THE COURT:  I'm sorry?

15          THE DEFENDANT:  Can you repeat your question please?

16          THE COURT:  So the question that I have is, do you now

17   want to be your own lawyer with Mr. Commissiong as your adviser

18   acting as standby counsel?  He is not permitted to make

19   arguments.  He is not permitted to introduce evidence.  He is

20   not permitted to question witnesses.  All he would be permitted

21   to do is to essentially whisper in your ear and say 'I think

22   that you should present this evidence or I think that you

23   should ask this question'.

24          THE DEFENDANT:  Your Honor, you know, first of all, I

25   apologize for having a conversation with you.  This is

1    something I really wanted to avoid, but I believe that you have

2    not understood what I was saying.  What I was saying is I want

3    to remain passive in this case.  Then you say to have a option.

4    Then you say I must have standby lawyer.  This is argument that

5    we have all this morning, the discussion of that all this

6    morning concerning is around this.  Then you, my original

7    options that I decide in a heartbeat is to remain passive in

8    this case and no one is sitting beside me and let the

9    government proceed unopposed.  But you told me that you cannot

10   accept that.  This in your courtroom and I must have a standby

11   lawyer.  This is the option that you have made, options from

12   your side.  But for me my option is only two.  It is either to

13   have to remain passive in this case, which is something that I

14   love to do it but you can't allow it in your courtroom.  The

15   only thing I must have now, must have a standby lawyer so that

16   we can proceed.

17            THE COURT:  All right.  Let me clarify.  What you want

18   to do is to be by yourself without a lawyer and to be passive

19   and quiet and let the prosecution put on their case and you

20   would do nothing.  That is your choice.  That is your first

21   choice, your request.  Am I correct?

22            THE DEFENDANT:  That is correct.

23            THE COURT:  Okay.  What I'm saying is that I won't

24   permit you to do that but you can decide to remain passive and

25   have a standby lawyer.  In other words, the lawyer would make

1    recommendations to you as to what the lawyer believes that you

2    should do.  And you can say 'I don't want to do that.  I want

3    to be passive', and you can remain passive.

4            Do you understand what I'm saying?

5            THE DEFENDANT:  I understand that is what you are

6    saying and that is my position.

7            THE COURT:  Your position is that you understand that

8    I am imposing the standby counsel but that you do not want to

9    essentially have anything to do with the standby counsel.

10           Is that correct?

11           THE DEFENDANT:  That is -- repeat the question again,

12    please.

13           THE COURT:  Okay.  Under this scenario where I am

14    imposing a standard counsel, Mr. Commissiong, he would be

15    reviewing the discovery and he would contact you and he would

16    say 'I think that we should make this motion or I think that we

17    should go forward with this defense', and you would say to him

18    'yes', 'no', or nothing.  In other words, you could remain

19    quiet, in which case if you don't oppose, he can go forward and

20    represent you to the extent that he is submitting these

21    motions.  If you say 'no, don't do that', then he cannot do

22    that.

23           Do you follow me?

24           THE DEFENDANT:  I understand what you are saying.  I

25    understand what you are saying.  That's up to me now.  It's my

1   own discretion.

2           THE COURT:  That is correct.

3           THE DEFENDANT:  I understand what you are saying and

4   that's what I want.

5           THE COURT:  You want to have the option of saying

6   nothing, saying 'no' or saying 'yes'; is that correct?

7           THE DEFENDANT:  That's correct.

8           THE COURT:  Okay.  I need to ask you some questions to

9   make sure that you are making this decision in a knowing and

10  voluntary way.

11          I went over with you the six charges that you are

12  facing and I mentioned to you that the maximum term of

13  imprisonment for all six counts is life imprisonment with a

14  mandatory minimum of 20 years imprisonment.

15          I also mentioned to you that during every phase of the

16  case, pretrial, trial and post trial, there is legal work that

17  needs to be done.  And I told you that it is best for you to

18  have a lawyer because a lawyer such as Mr. Commissiong is

19  trained.  He has special knowledge and presents the best option

20  for you against the prosecution.

21          You understand that, correct?

22          THE DEFENDANT:  Correct.

23          THE COURT:  Your standby lawyer, Mr. Commissiong, is

24  there to help you, to consult with you about investigating the

25  facts and the law and to identify possible defenses and to

1    suggest appropriate motions to file.  He is there to assist you

2    but he is not permitted to interfere with your control of the

3    case with a few exceptions.  In other words, you don't have a

4    right to reject the standby counsel.  Even if you remain

5    passive, the standby counsel will remain throughout the case.

6             You understand?

7             THE DEFENDANT:  Yes.

8             THE COURT:  Even with standby counsel, you have a

9    right to control the organization of the content of your own

10   defense, to make motions, to argue points of law and to address

11   the Court.  Mr. Commissiong cannot interfere with your control

12   of the case.  You ultimately retain final authority of over the

13   case.

14            Do you understand?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Now, if you should decide that you want to

17   act as your own lawyer, in other words, if you decide to go

18   from being passive to acting as your own lawyer, you would have

19   to abide by all of the rules of criminal procedure, evidence

20   and decorum.  But standby counsel is there to ensure your

21   compliance with all of the rules.  Standby counsel can also

22   facilitate communication between yourself and the government.

23   Mr. Commissiong would play a critical role in helping you to

24   manage the litigation.

25            There is a loft discovery in this case that is

1    classified and standby counsel play a key role in managing and

2    litigating issues related to classified documents.  To the

3    extent that you want to inform yourself about the evidence, he

4    is there to help you and he will explain all of the rules that

5    apply.

6            Do you understand?

7            THE DEFENDANT:  Yes.

8            THE COURT:  However, if you should decide to represent

9    yourself, to present evidence or to question witnesses, you

10   cannot have Mr. Commissiong act at the same time as the lawyer

11   in the case.  He would remain as standby counsel only giving

12   you advice.

13           Do you understand that?

14           THE DEFENDANT:  I understand.

15           THE COURT:  And if you should decide that you want him

16   to act as your lawyer, then any further participation, if you

17   should say 'I want you to question this witness' 'I want to you

18   make this option', 'I want you to make a legal argument to the

19   Court', at that point it is presumed that you have consented to

20   him acting as your attorney.

21           Do you understand?

22           THE DEFENDANT:  I understand.

23           THE COURT:  And you would not be able to complain

24   about it later.  Once you put him in the role of active

25   attorney, that's it.  You cannot go back to his being standby

1    counsel.

2             Do you understand?

3             THE DEFENDANT:  I understand.

4             THE COURT:  Just to sum up, you have the right to be

5    represented by a lawyer.  You have the right to represent

6    yourself and you can decide to remain completely passive if

7    that is what is your ultimate choice.  But if you are

8    represented by an attorney, then it is the lawyer and not you,

9    who will conduct the defense.  If you decide to represent

10   yourself you will be performing the lawyer's core function but

11   you cannot convert your standby counsel into a co-attorney.

12            Do you understand that?

13            THE DEFENDANT:  No.

14            THE COURT:  In other words, if you should decide that

15   you want to represent yourself, that you want to present

16   evidence, that you want to challenge the evidence presented by

17   the prosecution, you want to question, if you decide to get

18   involved in that way, you then cannot have Mr. Commissiong be

19   your co-attorney and say 'oh, then you question the next

20   witness'.  There's going to be one lawyer standing up in this

21   case and it can be you.  You can represent yourself with

22   Mr. Commissiong as standby counsel or you can decide that you

23   want him to take the active role as the lawyer.  But what you

24   cannot do is have two active lawyers.

25            Do you understand?

NBLAAABDC                     Conference

1          THE DEFENDANT:  I understand.

2          THE COURT:  You cannot be the lawyer and at the same

3     time Mr. Commissiong be the lawyer.  It's one or the other.

4          Understood?

5          THE DEFENDANT:  I understand.

6          THE COURT:  If you reject the representation by a

7     lawyer, that does not give you an entitlement to additional

8     resources.  In other words, you don't have the right to have a

9     personal laptop or computer simply because you've chosen not to

10     have a lawyer.  You will have to conduct your defense within

11     the limits of resources that the Court and the MDC made

12     available to you.  I can work to ensure that the MDC does not

13     arbitrarily interfere with your right to defend yourself but

14     you are not entitled to any special consideration or exception

15     from MDC policies.

16          Do you understand that?

17          THE DEFENDANT:  "MDC" you mean Metropolitan Detention

18     Center?

19          THE COURT:  Yes.

20          THE DEFENDANT:  I understand.

21          THE COURT:  In other words, this decision that you

22     made to have standby counsel, that does not give you access to

23     anything that thus far you have not been given access to.

24          You understand?

25          THE DEFENDANT:  I understand.

1              THE COURT:  In other words, this arrangement does not

2      give you any more privileges than you already have; you

3      understand?

4              THE DEFENDANT:  I understand.

5              THE COURT:  So, under this arrangement you have to

6      understand that you don't have license to abuse the divinity of

7      the courtrooms or license to violate the rules of procedure and

8      the substantive law.

9              Do you understand that?

10             THE DEFENDANT:  I understand.

11             THE COURT:  You must always abide by the courtroom

12     protocol and maintain proper decorum and you certainly have.

13     You have been a gentleman always in my courtroom.  I expect you

14     will continue in that same way.

15             Understood?

16             THE DEFENDANT:  I understand.

17             THE COURT:  And not disrupt the proceedings.  You have

18     to follow the rules of evidence and obey my rulings.

19             If you should decide that you want to act as your own

20     attorney, then in questioning any witness you must be

21     courteous.  You cannot be personal.

22             Do you understand that?

23             THE DEFENDANT:  I understand.

24             THE COURT:  And you understand that if you refuse to

25     follow any of my directions, if you have taken on the role of

NBLAAABDC                    Conference

1    representing yourself, then I can bring that to an end if you

2    should abuse any of the rules.

3            Do you understand?

4            THE DEFENDANT:  What should you bring to an end?

5            THE COURT:  In other words, if you should decide to go

6    from being in a passive role to actually representing yourself,

7    if you don't follow my rules, then I can simply prohibit you

8    from representing yourself.  Do you understand?

9            THE DEFENDANT:  I understand.

10           THE COURT:  If you engage in any serious or

11   obstruction-ous misconduct I can completely terminate your role

12   representing yourself.

13           Do you understand?

14           THE DEFENDANT:  I understand.

15           THE COURT:  This case involves a substantial amount of

16   information that has been classified in the interest of

17   national security.  The use of classified information in court

18   proceedings is governed by a statute called the Classified

19   Information Procedure Act or CIPA.  If you choose to represent

20   yourself you may only use classified information that is

21   specifically authorized after following the procedures spelled

22   out in CIPA.

23           You understand?

24           THE DEFENDANT:  Yes.

25           THE COURT:  If you do decide to represent yourself

1    you're not entitled to any greater access to classified

2    documents.  Do you understand that?

3                THE DEFENDANT:  I understand.

4                THE COURT:  Your standby counsel, Mr. Commissiong, he

5    has security clearance to view classified documents.  He will

6    handle matters related to classified information.

7                THE DEFENDANT:  Your Honor, about the classified I've

8    already been in the SCIF in the ninth floor and the lawyer

9    Shroff, attorney Shroff, she gave me, she told me I have the

10    right to review the classified discoveries before.

11                THE COURT:  Some of it you do have the right to look

12    at but some of it you do not.

13                THE DEFENDANT:  What are those?

14                THE COURT:  That's spelled out in the existing order

15    and Mr. Commissiong can go over that with you.

16                Mr. Commissiong would be litigating the use, relevance

17    and admissibility of classified information at trial.  He would

18    also litigate any substitutions, redactions or other

19    modifications and classified documents that the government may

20    want to make in preparation for trial.  He has to follow all

21    the stipulations laid out in CIPA Section III of the protective

22    order pertaining to classified documents.  And that order was

23    entered on January 5, 2021 at ECF 15.

24                For example, standby counsel shall not disclose

25    classified information to you other than materials marked

NBLAAABDC                    Conference

1    provided to Abdullah in United States versus Abdullah, 20 CR

2    677 absent written permission to the government or order from

3    the Court.  Do you understand?

4                THE DEFENDANT:  I understand.

5                THE COURT:  Standby counsel may not confirm or deny to

6    you any assertions you make based on knowledge the standby

7    counsel may have obtained from classified information except

8    where the classified information has also been provided you

9    pursuant the protective order.

10                Do you understand?

11                THE DEFENDANT:  I understand.

12                THE COURT:  Pretrial conferences involving classified

13    information should be conducted in-camera in the interest of

14    national security, attended only by persons granted access to

15    the classified information and a need-to-know and the

16    transcripts of such proceedings shall be maintained under seal.

17    This means that unless I rule that you can be in attendance for

18    of a pretrial conference involving classified information you

19    won't be allowed to attend.  Standby counsel will handle this

20    without you.

21                Do you understand?

22                THE DEFENDANT:  I understand.

23                THE COURT:  I have made rulings about what classified

24    information can be disclosed in your case.  If you disclose

25    classified information without being authorized to do so, you

1    may be subjected to additional penalties.

2            Do you understand?

3            THE DEFENDANT:  I understand.

4            THE COURT:  Although you will be in control of the

5    presentation of evidence before the jury, to the extent that

6    you decide to represent yourself, standby counsel will and in

7    consultation with you handle the litigation of the admissible

8    form of any classified evidence.

9            Do you understand?

10           THE DEFENDANT:  I understand.

11           THE COURT:  If you need to discuss classified matters

12   with standby counsel, you'll be able to do so in the secured

13   areas of the U.S. Marshals facility set up for that purpose,

14   but you will not personally be able to access the classified

15   materials themselves or permitted to go into the courthouse

16   SCIF unless I grant permission for either of these things.

17           Do you understand?

18           THE DEFENDANT:  I understand.

19           THE COURT:  Of course, do not assume that I will grant

20   such permission.  If you were to decide to be represented by a

21   lawyer, then the lawyer would conduct your defense in its

22   entirety and be able to handle classified matters subject to

23   decisions that are yours to make, such as the right to testify,

24   the right to go to trial and the like.

25           Do you understand?

1          THE DEFENDANT:  I understand.

2          THE COURT:  I am going to ask you some questions

3    Mr. Abdullah, about your background, your education, job

4    experience and familiar with the American legal system in order

5    to determine whether your decision today is made knowingly,

6    intelligently and voluntarily.  I'm also going to inquire about

7    any recent or regular use of alcohol, narcotics or prescription

8    medications to assure myself that your judgment is not clouded.

9    I'll then hear your decision and make any own determination as

10   to whether you have knowingly, intelligently, voluntarily and

11   unequivocally waived your right to counsel.

12         Any questions?

13         THE DEFENDANT:  I don't have any questions.

14         THE COURT:  Excuse me?

15         THE DEFENDANT:  No questions.

16         THE COURT:  What is your primary language?

17         THE DEFENDANT:  Borana, B-o-r-a-n-a and Swahili.

18         THE COURT:  But I understand that you speak, read and

19   write English; is that right?

20         THE DEFENDANT:  That's correct.

21         THE COURT:  Are you aware that you have a Sixth

22   Amendment right to counsel?

23         THE DEFENDANT:  I understand.

24         THE COURT:  Do you also know that you have the right

25   under the Sixth Amendment to represent yourself?

1            THE DEFENDANT:  I understand.

2            THE COURT:  Although have you a right to represent

3    yourself, the Court must decide for itself whether your waiver

4    of your right to counsel is knowing, intelligent, voluntary and

5    unequivocal; do you understand?

6            THE DEFENDANT:  I understand.

7            THE COURT:  Tell me what your full name is.

8            THE DEFENDANT:  Cholo Abdi Abdullah.

9            THE COURT:  What is your date of birth?

10           THE DEFENDANT:  22nd October, 1980.

11           THE COURT:  Have you ever been treated or hospitalized

12   for mental illness?

13           THE DEFENDANT:  No.

14           THE COURT:  Have you ever been addicted to drugs or

15   alcohol.

16           THE DEFENDANT:  No.

17           THE COURT:  Are you now or have you recently been

18   under the care of a doctor or a psychiatrist?

19           THE DEFENDANT:  No.

20           THE COURT:  Have you taken any drugs, medicine or

21   pills or drank any alcoholic beverages in the last 24 hours?

22           THE DEFENDANT:  No.

23           THE COURT:  Is there any medication that you are

24   supposed to take that you did not take?

25           THE DEFENDANT:  No.

NBLAAABDC                     Conference

1          THE COURT:  Is your mind clear today?

2          THE DEFENDANT:  Yes.

3          THE COURT:  You understand what's happening in this

4     proceeding?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You are feeling well enough to proceed

7     with this case?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you would, describe your education

10    please.

11         THE DEFENDANT:  My prior education is I went, I have

12    diploma degree in journalism.

13         THE COURT:  That's a university degree?

14         THE JUROR:  A college diploma.

15         THE COURT:  Okay.  What about your work experience?

16    Please, tell me about that.

17         THE DEFENDANT:  I no work.

18         THE COURT:  You did not work at all?

19         THE DEFENDANT:  I never worked with -- casual, yes,

20    but the official work that it is I can explain to you, that's

21    no.

22         THE COURT:  Okay.  How old were you when you graduated

23    from college?

24         THE DEFENDANT:  Twenty-four.

25         THE COURT:  And you're now 33; is that correct?

NBLAAABDC                    Conference

1          THE DEFENDANT:  That's correct.

2          THE COURT:  After graduation from college, you did not

3     have any job?

4          THE DEFENDANT:  No.

5          THE COURT:  How did you support yourself?

6          THE DEFENDANT:  This is something that I would like

7     to, I don't want to discuss it before the Court.

8          THE COURT:  Understood.  Very well.

9          Did you ever study law?

10          THE DEFENDANT:  Never.  But I did some one books, I

11     did one book about the criminal procedure.

12          THE COURT:  Is that U.S. criminal procedure?

13          THE DEFENDANT:  Yes.  I read in prison.

14          THE COURT:  You said that you represented yourself in

15     the Philippines; is that correct.

16          THE DEFENDANT:  No, that's not correct.  I said I was

17     represented by a lawyer in the Philippines where I never had

18     any problem with the lawyers there.

19          THE COURT:  Okay.

20          THE DEFENDANT:  I had a lawyer in the Philippines.

21          THE COURT:  You had a lawyer in the Philippines?

22          THE DEFENDANT:  Yes.

23          THE COURT:  I am going to advise you again about the

24     charges that you are facing.  You've been indicted by grand

25     jury on multiple criminal charges.  Count One charges you with

NBLAAABDC                    Conference

1  conspiring to provide material support to a foreign terrorist

2  organization in violation of 18 U.S.C. Section 2339B.

3          Count Two Charges you with the provision of materials

4  supported to a foreign terrorist organization in violation of

5  18 U.S.C. Section 2339B.

6          Each of those counts carries a maximum term of 20

7  years imprisonment; maximum terms of supervised release of

8  life; a maximum fine of $250,000 and a $100 special assessment.

9          Count Three charges you with conspiring to murder U.S.

10  nationals in violation of 18 U.S.C. Section 23332.

11          This count carries a maximum term of life

12  imprisonment, a maximum term of supervised release of life, a

13  maximum fine of $250,000 and a $100 special assessment.

14          Count Four charges you with conspiring to commit

15  aircraft piracy in violation of 49 U.S.C. Section 46502.

16          This count carries a maximum term of life

17  imprisonment, a mandatory minimum term of 20 years

18  imprisonment, a maximum term of supervised release of life, and

19  a maximum fine of $250,000 and a $100 special assessment.

20          Count Five charges you with conspiring to destroy

21  aircraft in violation of 18 U.S.C. Section 32.

22          This count carries a maximum term of 20 years

23  imprisonment, a maximum term of supervised release of life, a

24  maximum fine of $250,000 and a $100 special assessment.

25          Count Six charges you with conspiring to commit acts

1  of terrorism by extending national boundaries in violation of

2  18 U.S.C. Section 2332D.

3          This count carries a maximum term of life

4  imprisonment, a maximum term of supervised release of life, a

5  maximum fine of $250,000 and a special assessment of $100.

6          The maximum term of imprisonment for all six counts is

7  life imprisonment.

8          Do you understand?

9          THE DEFENDANT:  I understand.

10         THE COURT:  Do you understand that if you are

11  convicted, your sentence will be in part governed by the United

12  States Sentencing Guidelines?

13         THE DEFENDANT:  I understand.

14         THE COURT:  Have you discussed the Sentencing

15  Guidelines with Ms. Shroff, your former attorney?

16         THE DEFENDANT:  I actually discussed with the previous

17  attorney.

18         THE COURT:  You understand that in determining your

19  sentence, the Court must consider the guidelines even though

20  they are not binding?

21         THE DEFENDANT:  But I was told that it's not set in

22  stone, that you are not abiding to follow the guidelines.  You

23  can choose the guidelines or not.  That's what I was informed.

24         THE COURT:  That's right.  I must consider the

25  guidelines but I do not have to impose sentence that is within

NBLAAABDC                    Conference

1    the guidelines range.  If you should decide to represent

2    yourself to be your own lawyer, you have to stand by yourself.

3    I will not be able to advise you how to present you case.  I

4    will not be able to help you with your case.

5              Do you understand?

6              THE DEFENDANT:  I understand.

7              THE COURT:  Do you understand that self-representation

8    may conflict your Fifth Amendment right to remain silent

9    because you may have to speak in the course of representing

10   yourself?

11             THE DEFENDANT:  I don't understand.

12             THE COURT:  Under the Fifth Amendment of the United

13   States Constitution you have the right to remain silent.  You

14   don't have to say anything.  You can be completely quiet but if

15   you are acting as your own attorney, if you decide that's what

16   you want to do, then it's very likely then you'll have to say

17   something in the courtroom.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  There's a tension between remaining silent

21   and exercising your Fifth Amendment right and serving as your

22   own lawyer.  I'm just pointing out that tension.

23             Do you understand?

24             THE DEFENDANT:  I understand.

25             THE COURT:  And are you familiar with the Federal

NBLAAABDC                    Conference

1   Rules of Evidence?

2              THE DEFENDANT:  No.

3              THE COURT:  Are you familiar with the Federal Rules of

4   Criminal Procedure?

5              THE DEFENDANT:  No.

6              THE COURT:  You recognize that an attorney better able

7   to deal with issues relating to trial, post trial motions,

8   sentencing, appeals and other matters?

9              THE DEFENDANT:  Yes.

10             THE COURT:  For example, there may be a statement made

11   by a witness that is hearsay.  A witness may be giving an

12   answer that will violate the rules on hearsay say but you would

13   not know that because you are not a trained lawyer and you

14   wouldn't know to make the objection at that time.  And if

15   objections are not made on a timely basis during the trial so

16   that the judge can correct the problem, it's much more

17   difficult on appeal to have that error addressed by an

18   appellate court.

19             Do you understand that?

20             THE DEFENDANT:  I understand.

21             THE COURT:  You understand that if you are not

22   satisfied -- the point that I want to make is that you do not

23   have to represent yourself because you are dissatisfied with

24   your attorney; do you understand?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And you have the right to request a new

2    attorney but if I believe that you are making that request in

3    order to delay the case, then I have the discretion to refuse

4    that.  You've already had a change of with a number of

5    attorneys.  You understand that if I believe that you are not

6    making your request for a legitimate reason, then I can deny

7    that request.

8          Do you understand that?

9          THE DEFENDANT:  I understand.

10         THE COURT:  If you choose to represent yourself, you

11   don't actually have an absolute right to have counsel appointed

12   after that.  Although, it's something that I could consider.

13         Do you understand?

14         THE DEFENDANT:  I understand.

15         THE COURT:  Do you understand that I am now going to

16   appoint Mr. Commissiong to act as standby counsel for you?

17         THE DEFENDANT:  I understand.

18         THE COURT:  You understand that he cannot advocate for

19   you except with regard to the classified documents that I

20   discussed?

21         THE DEFENDANT:  Say it again.

22         THE COURT:  He cannot make arguments with regard to

23   classified documents.  Those are legal arguments that he would

24   be making but he would not be able to question witnesses.  He

25   would not be able to make arguments with regard to other legal

NBLAAABDC                      Conference

1    issues.

2              Do you understand?

3              THE DEFENDANT:  I understand.

4              THE COURT:  Do you understand that you must obey my

5    rulings even if you disagree with them knowing that you

6    reserved your objections for review by appellate court?

7              THE DEFENDANT:  I understand.

8              THE COURT:  Do you understand that if you do not

9    comply with the rules of the court including the rules

10   regarding the timing, length and/or content of violations, I

11   may choose to refuse to consider those violations or even to

12   revoke your status representing yourself if that is what you

13   decide to do?

14             THE DEFENDANT:  I understand.

15             THE COURT:  As I have stated, this case involves a

16   substantial amount of information that has been classified in

17   the interest of national security.  If you choose to represent

18   yourself you may only use classified information that is

19   specifically authorized after following the procedures spelled

20   out in the Classified Information Procedure Act.

21             Do you understand?

22             THE DEFENDANT:  I understand.

23             THE COURT:  If you disclose a classified information

24   without permission, you may be subjected to additional criminal

25   charges; do you understand that?

NBLAAABDC                    Conference

1            THE DEFENDANT:  I understand.

2            THE COURT:  Do you understand that an experienced

3    defense lawyer is more qualified to conduct a defendant's legal

4    defense than is the defendant himself?

5            THE DEFENDANT:  I understand.

6            THE COURT:  In the event that you decide to represent

7    yourself, you must understand that a professional attorney

8    would not face the problems that you may face because you are

9    incarcerated, you are always going to be at a disadvantage

10   compared to an attorney who does not carry the burden of being

11   incarcerated.

12           Do you understand?

13           THE DEFENDANT:  I understand.

14           THE COURT:  Do you understand that if you do choose to

15   represent yourself, you will have to do so with the resources

16   that are currently available to you?  You will not be given

17   special access to resources of personal computer, electronic

18   resources and no exceptions will be made at the MDC simply

19   because you have decided to represent yourself.

20           THE DEFENDANT:  I understand.

21           THE COURT:  You understand that you represent yourself

22   and make mistakes, you will not be able to use those mistakes

23   as a basis of an appeal of your conviction or claim that you've

24   received ineffective assistance of counsel?

25           THE DEFENDANT:  I understand.

1    THE COURT:  Do you now waive any claims of ineffective

2    assistance of counsel relating to your representation of

3    yourself should you decide to do that?

4    THE DEFENDANT:  Say it again.

5    THE COURT:  Do you waive any claims of ineffective

6    assistance of counsel relating to your representation of

7    yourself if you decide to represent yourself?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Okay.  Because remember, at this point you

10    have both the right to represent yourself as well as the right

11    to not do anything; do you understand that?

12    THE DEFENDANT:  I understand.

13    THE COURT:  I'm keeping that open for you.  In light

14    of the penalties that you may suffer if you were found guilty

15    in light of the difficulties representing yourself, you still

16    want to have the right to decide to represent yourself and to

17    give up your right to be represented by an attorney?

18    THE DEFENDANT:  I don't understand.

19    THE COURT:  So, what we have gone over is that you've

20    told me that you don't want to be represented by an attorney.

21    THE DEFENDANT:  That's correct.

22    THE COURT:  And we've discussed that you can either

23    remain passive or you can decide to represent yourself, your

24    own attorney, correct?

25    THE DEFENDANT:  Correct.

1          THE COURT:  Okay.  If you remain passive or you
2     represent yourself as your own attorney, you're giving up your
3     right to be represented by a lawyer.  That's what we're
4     discussing here today.
5          THE DEFENDANT:  I understand.
6          THE COURT:  And you want to give up your right to be
7     represented by a lawyer; is that right?
8          THE DEFENDANT:  That's correct.
9          THE COURT:  Even though they have mentioned all these
10    difficulties that you will face?
11         THE DEFENDANT:  That's correct.
12         THE COURT:  Are you making this waiver decision
13    voluntarily?
14         THE DEFENDANT:  Yes.
15         THE COURT:  Has anybody threatened to bribe or forced
16    you to waive this right?
17         THE DEFENDANT:  No.
18         THE COURT:  Has anyone made any promises or
19    inducements or other benefits to get you to waive this right?
20         THE DEFENDANT:  No.
21         THE COURT:  Under the law I must advise you that your
22    waiver of the right to counsel must be knowing, voluntary and
23    intelligent.  They also must be unequivocal.  Do you
24    understand?
25         THE DEFENDANT:  I understand.

NBLAAABDC                    Conference

1          THE COURT:  I want to warn you that representing

2     yourself at trial is unwise and I believe that you would be

3     better represented by an experienced criminal defense attorney;

4     do you understand?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Mr. Abdullah, you waived your right to be

7     represented by an attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And you are keeping open your right to

10    either represent yourself or to remain passive and do nothing?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  Do any of the attorneys want me to

13    ask any further questions of Mr. Abdullah?

14         MR. DENTON:  Not from the government, your Honor.

15         MR. COMMISSIONG:  Not from me, your Honor.

16         THE COURT:  According to the Supreme Court's decision

17    in Indiana versus Edwards, 554 U.S. 164, 2008.  The

18    Constitution permits the Court to insist upon representation by

19    counsel for those competent enough to stand trial, but who

20    still suffer from severe mental illness to the point where

21    they're not competent to conduct trial proceedings by

22    themselves.

23         Certain individuals may well be able to satisfy the

24    mental competency standards to stand trial or he will be able

25    to work with counsel at trial, yet at the same time he may be

NBLAAABDC                    Conference

1    able to carry out the basic tasks needed to present the

2    evidence without the help of counsel.

3            Moreover, insofar as a defendant's lack of capacity

4    threatens an improper conviction or sentence

5    self-representation in that exceptional context undercuts the

6    most basic of the Constitution's criminal law objectives,

7    providing a fair trial.

8            The Court shall take realistic account of this

9    particular defendant's mental capacities and requires the Court

10   to exercise discretion and there is no affirmative duty on the

11   Court to order a psychiatric evaluation or any other mental

12   examination.

13           Where a defendant has been found competent to stand

14   trial, Edwards does not require a court to conduct a further

15   competency hearing or order psychiatric evaluation before

16   permitting a defendant to represent himself.

17           As the Supreme Court has recognized, the district

18   court is often best able to make more fine-tuned mental

19   capacity decisions tailored to the individualized circumstances

20   of the particular defendant.  Edwards 554 U.S. at 174.

21           Does either side have any doubt as to Mr. Abdullah's

22   capacity to proceed pro se or to stand trial?

23           MR. DENTON:  No, your Honor.

24           MR. COMMISSIONG:  No, your Honor.

25           THE COURT:  I have observed Mr. Abdullah's demeanor

here in the courtroom.  He is able to speak clearly and conduct

himself professionally.  He is organized in his response to me.

Counsel, is there anything that you believe that

indicates that Mr. Abdullah is incapable of presenting his own

defense?

MR. DENTON:  No, your Honor.

MR. COMMISSIONG:  No, your Honor.

THE COURT:  I, therefore, find that Mr. Abdullah is

competent to stand trial and to represent himself.

Do you attorneys agree Mr. Abdullah understands that

he has the right to be represented by counsel, that he is

competent to waive his right to counsel and that he has waived

his right to counsel knowingly, intelligently, voluntarily and

unequivocally?

MR. DENTON:  Yes, your Honor.

MR. COMMISSIONG:  Yes, your Honor.

THE COURT:  On the basis of Mr. Abdullah's responses

to my questions, my observation of his demeanor here in court

and the representations of counsel, I find that the defendant

is fully competent to understand and consider these proceedings

and waives his right to counsel and represent himself.  He is

also fully competent to make a decision to remain passive if

that's what he decides.

I find that he is competent to stand trial, that he

understands the nature of these proceedings, that he

1    understands that he has the right to an attorney throughout

2    these proceedings, that he is competent to waive his right to

3    counsel, that he has the mental capacity to a conduct trial

4    proceedings by himself and that he has waived his right to

5    counsel knowingly, intelligently, voluntarily and

6    unequivocally.

7           Therefore, now going forward, Mr. Abdullah, you are

8    now in the position of deciding to either represent yourself or

9    to remain passive as you have described to me, and I am

10   appointing Mr. Commissiong to serve as standby counsel.

11          Any objections?

12          MR. DENTON:  Not from the government, your Honor.

13          MR. COMMISSIONG:  No, your Honor.

14          THE COURT:  Currently trial is scheduled for January

15   8th, but in light of today proceedings, trial must be

16   adjourned.  I'd like to adjourn trial to July 1st.

17          THE DEFENDANT:  I object to that, your Honor.  I would

18   like --

19          THE COURT:  One second.  Let me just hear first from

20   the attorneys as to whether or not they're available.

21          MR. DENTON:  Yes, your Honor.

22          MR. COMMISSIONG:  Your Honor, currently, I'm available

23   but I have a case in front of Judge Rearden and she had just

24   asked counsel about two weeks ago whether we were available

25   around July/August for a trial in that matter, United States v.

1    Edward Perez, 23 CR 203, and we told her that we were

2    available.  My response there and my response here are sort of

3    butting heads, so to speak.

4                THE COURT:  What is your understanding, that she was

5    going to get back to you?

6                MR. COMMISSIONG:  Yes, yes.  And the Court hasn't

7    gotten back to us yet.

8                THE COURT:  All right.  Well, I can contact her and

9    ask her when she plans to go forward.

10               MR. COMMISSIONG:  Okay.

11               THE COURT:  I suppose I would have to get back to you

12   then about the trial date.  In the meantime I'd like to set a

13   motion schedule.  I'd like the two sides to confer with each

14   other and submit a proposed motion schedule.

15               MR. COMMISSIONG:  Yes, your Honor.

16               THE COURT:  If you could do that within two weeks,

17   December the 12th.

18               Now, Mr. Abdullah, what was your objection?

19               THE DEFENDANT:  My objection is postponing the trial

20   because the last time I was here the trial was set in January

21   2024.

22               THE COURT:  Yes.

23               THE DEFENDANT:  I am already in incarceration for

24   almost three years now since I was brought here, and every time

25   it is postponed.  It was postponed many times and no one has

1    ever consulted with me before and I really want this case to be

2    over because you already know about my situation where I'm

3    housed in the prison.  It's not good for me to stay for long

4    time in prison just waiting, waiting, waiting.  You already

5    know about the psychological impact that it has on human

6    beings.  So, for me I will ask the Court to give me a speedy

7    trial.

8            THE COURT:  One of the problems that we have had,

9    Mr. Abdullah, is the fact that you have requested a change of

10   attorney and all of this has slowed down the process.  In order

11   for Mr. Commissiong to have enough time in order to review the

12   voluminous amounts of information, I cannot keep the trial in

13   January.  That's just not realistic.  Now, it's possible that

14   we might be able to do it before July but let me consult with

15   the attorney's schedules.

16           If you could just tell me any blackout dates that you

17   have.

18           (Pause)

19           MR. DENTON:  Your Honor, one of the attorneys for the

20   government has a trial scheduled in June.  So, I think between

21   preparation and then the trial itself on June 10th probably

22   would not work.  I could suggest, your Honor, that we could

23   confer with standby counsel and as part of proposing a motion

24   schedule if it is in fact Mr. Abdullah's instruction that

25   counsel not file any motion, then we might be able to find the

NBLAAABDC                    Conference

1   time between now and July.  I'm sure we'd be able to consult

2   and confer with your Honor's chambers if there are any windows

3   in there.

4                THE COURT:  Okay.  You will confer with each other and

5   come back to me with some proposed dates.

6                MR. COMMISSIONG:  That's fine, your Honor.

7                THE COURT:  Is there anything further?

8                THE DEFENDANT:  Yes.  I would like to raise some

9   prison concerns before the Court if you allow me.

10               THE COURT:  You mean conditions of the prison?

11               THE DEFENDANT:  Yeah.  One of the conditions that I

12  would like you as the Court to fix it because it is easy to fix

13  it also.

14               THE COURT:  So, if you would, just because everything

15  that you are saying is now being taken down and I just don't

16  want you to say anything about the case.  That is why I would

17  suggest --

18               THE DEFENDANT:  It's not about the case.  It is my

19  housing in the prison.

20               THE COURT:  Okay.  Go ahead.

21               THE DEFENDANT:  Your Honor, in our unit before we are

22  like six.  Now we are three.  And in every door there's a

23  speaker that's a, it releases a white noise.  So this white

24  noise has a very negative impact on my psychology.  I've

25  already talked to the officer and unit manager but he never do

1  anything about it and I would like the Court to intervene

2  because this white noise was used, was previously put there to

3  disrupt the conversation with the inmates, but now there is no

4  inmate.  For example, where I'm housed, I'm housed in a upper

5  floor.  In upper floor I am the only inmate.  And the other

6  two, they are cells is very fair, the white noise would be

7  switched off.  Then it would be unable.  The composition would

8  be imposition.  And as for now, I don't know who is in that, in

9  the unit.  I cannot call to anyone.  I would like the Court to

10  ask the BOP to switch off that white noise.

11            THE COURT:  What is the point of the white noise?

12            THE DEFENDANT:  For me sitting right now, I have like

13  a (making sounds) sound in my ears.  Also at night when I sleep

14  sometimes I feel like I am in a ocean.  You know, living on a

15  beach.  Also, it has a very, it disturbing me a lot.  I cannot

16  concentrate sometimes.

17            THE COURT:  You are saying that the noise is

18  disturbing to you.

19            THE DEFENDANT:  That is one.  I cannot speak behind

20  the doors.  I can't have conversation.  I cannot comply to the

21  doctors or the psychologies or to the officer even, the basic

22  needs that you are asking the officers, they give me some

23  clothes to change or tissue or some toothpaste.  I cannot tell

24  the officer because they hardly hear me because of the white

25  noise.  Even sometimes you want to, I want to talk to doctor

1    but you don't hear me what I'm saying.

2            THE COURT:  Okay.  I'm going to ask the prosecution to

3    look into this issue of the white noise.  There's two issues.

4    Number one, he says that he is far away from any other

5    prisoner, that keeping it on in order to interfere with

6    conversation does not make any sense.

7            The second thing is that he says he is not being able

8    to communicate his basic needs because it is loud.

9            I want you to look into that and get back to me as to

10    whether or not this can be ameliorated.

11            MR. DENTON:  Yes, your Honor.  We'll follow-up with

12    the MDC.

13            THE COURT:  Anything further?

14            THE DEFENDANT:  The second, even the attorney Shroff,

15    she raised at the beginning of the proceeding, that's the phone

16    call that I am supposed to have with her the phone call and a

17    two-hour video conference with the family.  We are came before

18    the Court and asked the Court to change video conference to

19    regular phone call because my in my home I don't have internet.

20    You agreed and they gave it to me twice a month phone call.

21    One is 90 minutes and another is one hour, twice a month.  That

22    is two hours 30 minutes.  And now before they gradually reduce.

23    First, they reduce it from two hours 30 minutes to two hours.

24    Then now the last time I have a phone call is only 30 minutes

25    and that was last week, where I was supposed to have at least

NBLAAABDC                    Conference

1    one hour and then another hour, two hours a month.

2            Please, it has impact also on my family because they

3    want to know about my wellbeing.  I want to have a conversation

4    with my family.  So it has become impossible.  And also I feel

5    like to I'm disturbed with them because the phone call is

6    supposed to be unconditional.  I don't need to fulfill any

7    condition to have that phone call because I believe that is

8    something that is entitled to me.

9            THE COURT:  Okay.  Again, Mr. Denton, I'd like to have

10   some clarification with regard to his communication with his

11   family.  If he doesn't want to use a videoconference, then the

12   telephone should be substituted for that and the amount of time

13   should be defined and he should get to enjoy the maximum

14   amount.

15           MR. DENTON:  Yes, your Honor.  I can say I think with

16   respect to the most recent phone call, there was a technical

17   issue because the BOP was upgrading the phone system at the

18   MDC.  So, that should have only been a one-time issue.  I'm not

19   aware of their having been issues with previous phone calls or

20   of any sort of reduction in the time that's been allotted to

21   Mr. Abdullah.  So, there too we will follow-up with the MDC and

22   try to find out what's going on.

23           THE COURT:  All right.  And you'll write to me about

24   that?

25           MR. DENTON:  Yes, your Honor.

1          THE COURT:  Anything further?

2          MR. COMMISSIONG:  Yes, just briefly, your Honor.

3              As I am just coming into this case, I am not aware of

4     the nature of the discovery whether it's voluminous.  I'm

5     assuming that it is.  I am assuming that the classified portion

6     of it is voluminous as well.  And just given the nature of the

7     case and the fact that this may likely go to trial, I just want

8     to give the Court a heads-up that I may request, I guess in

9     this case it would be co-standby counsel, just given the fact

10    that should this switch from a pro se representation to an

11    actual representation, I've got to be prepared to represent him

12    fully at the drop of a hat.  And I think co-counsel would be

13    prudent.

14         THE COURT:  Yes.  I've already approved co-counsel.

15    That was the first arrangement that he had.  And if you feel

16    that's necessary, then you just submit a request.

17         MR. COMMISSIONG:  Thank you, your Honor.

18         MR. DENTON:  Your Honor, the government would also

19    move to exclude time under the Speedy Trial Act until our

20    submission regarding a proposed motion schedule on December 12,

21    to allow the defendant time to confer with his new standby

22    counsel about whether to file any motions, for standby counsel

23    to receive and review full discovery and in light of the

24    overall complexity of the case.

25         THE COURT:  Any objection?

1        MR. COMMISSIONG:  No objection, your Honor.

2        THE DEFENDANT:  One thing, your Honor?

3        THE COURT:  Go ahead.

4        THE DEFENDANT:  The last time the prosecutor was here,

5   I think his name was "Wirshba" or I forgot his name.  He didn't

6   have any problem.  He said they don't have any problem.  The

7   government has no, any problem with the trial on January 2024.

8   So, that's what I'm asking.  I'm asking the Court to give me

9   trial on January 2024, as it was stated before.

10        THE COURT:  I understand, and we've discussed the

11   problem with that already.  I understand you want a trial as

12   soon as possible and I am going to hear back from the attorneys

13   about some proposed dates.

14        All right.  Time is excluded under the Speedy Trial

15   Act through December 12th of this year.  I find the ends of

16   justice served by excluding such time outweigh the interests of

17   the public and the defendant in a speedy trial because this

18   will allow time for the defense to review discovery and to

19   decide whether to review discovery and to prepare a joint

20   letter with regard to the matters that we have discussed.

21        That brings our conference to an end.  The matter is

22   adjourned.  I wish everyone happy Thanksgiving.

23                        (Adjourned)

24

25