OALsABDc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          20 CR 677 (AT)

 5   CHOLO ABDI ABDULLAH,

 6                   Defendant.

 7   ------------------------------x

 8                                          October 21, 2024
                                            11:15 a.m.
 9

10   Before:

11                      HON. ANALISA TORRES,

12                                          District Judge

13                         APPEARANCES

14   DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  NICHOLAS BRADLEY
          JONATHAN BODANSKY
17        Assistant United States Attorneys

18   CHOLO ABDI ABDULLAH
          Pro Se Defendant
19

20   ALSO PRESENT:
     KARLOFF COMMISSIONG, Standby Counsel
21   CHRISTINE DELINCE, Standby Counsel
     EMILEE SAHLI, Standby Counsel
22   SABRINA JIM MUNOZ, USAO Paralegal Specialist

23

24

25
```

OALsABDc

```
1              (Case called)
2              THE COURT:  Good morning.  We're here in the matter of
3      United States v. Cholo Abdi Abdullah.
4              Would you make your appearances, please.
5              MR. BRADLEY:  Good morning, your Honor.
6              Nicholas Bradley and Jonathan Bodansky for the
7      government, along, at counsel table, with Sabrina Jim,
8      paralegal specialist.
9              MR. COMMISSIONG:  Good morning, your Honor.
10             Karloff Commissiong, Christine  Delince, and Emilee
11     Sahli, standby counsel.
12             THE DEFENDANT:  Cholo Abdi Abdullah, the defendant.
13             THE COURT:  Please be seated.
14             Mr. -- is it -- Abdullah, or Abdullah?
15             THE DEFENDANT:  Abdullah.
16             THE COURT:  Mr. Abdullah, you stated when we had a
17     conference on November 21, 2023, that you speak, read, and
18     write English, although Boorana and Swahili are your primary
19     languages.
20             Is that correct?
21             THE DEFENDANT:  That's correct.
22             THE COURT:  You are not requesting the services of an
23     interpreter, is that correct?
24             THE DEFENDANT:  That's correct.
25             THE COURT:  So you don't want an interpreter today,
```

OALsABDc

 1    correct?

 2              THE DEFENDANT:  Correct.

 3              THE COURT:  And you don't want an interpreter for the

 4    trial, correct?

 5              THE DEFENDANT:  Correct.

 6              THE COURT:  You also stated on that day that you have

 7    a college diploma, specifically a degree in journalism, is that

 8    correct?

 9              THE DEFENDANT:  That's correct.

10              THE COURT:  I would like to begin today's conference

11    by reviewing your rights with respect to counsel.

12              During that hearing on November 21 of last year, after

13    an extended discussion of your right to be represented by

14    counsel and your right to represent yourself, I found that you

15    knowingly and intelligently, voluntarily, and unequivocally

16    waived your right to be represented by a lawyer in this case.

17    I relieved your court-appointed attorneys and I appointed

18    Mr. Commissiong --

19              Am I saying that correctly, sir?

20              MR. COMMISSIONG:  Yes, you are.

21              THE COURT:  -- standby counsel, to assist you in your

22    representation of yourself.

23              As I explained to you at that conference, you do not

24    have an absolute right to withdraw your request to represent

25    yourself.  I also explained that if you do represent yourself,

OALsABDc

1    you don't have an absolute right to reject the standby counsel

2    appointed by the court, though you are, of course, free to

3    ignore standby counsel's advice.

4              Do you understand?

5              THE DEFENDANT:  I understand.

6              THE COURT:  I would also like to remind you, with

7    trial beginning next week, that you do not have the right to

8    what is known as hybrid representation.  You have the choice to

9    either represent yourself and be in control of how you present

10   your case or a lawyer will represent you in this matter.  You

11   cannot freely move back and forth between these two poles.

12             Do you understand?

13             THE DEFENDANT:  Correction.  There is a correction,

14   because when on the last year when I was here, I explained

15   clearly to the court that my intention was not to represent

16   myself, but to waive the right of the legal counsel, but to

17   remain passive in the case without any participation.  That is

18   what I told the court clearly, I'm not representing myself or

19   presenting the evidence or presenting the defense.  This is

20   what I told the court last year in the last conference we had.

21             THE COURT:  That is my understanding.  You had said

22   that, essentially, you would remain in the courtroom, but not

23   do anything.

24             Is that correct?

25             THE DEFENDANT:  That is correct.

OALsABDc

1          THE COURT:  So, if at any point your standby

2   counsel -- and I'm not saying this is going to happen -- but if

3   you change your mind at any point and your standby counsel

4   starts to take on an active role by serving as your attorney

5   instead of acting as standby counsel, either at your invitation

6   or with your acquiescence, you may lose your right to complain

7   about the lawyers' role after the fact.

8          In other words, I will presume that the active

9   participation by the lawyer -- and, that is, if that happens --

10  is with your permission and that the lawyer, not you, is

11  putting on a defense, which means that you will have less

12  control over tactical decisions, questioning witnesses,

13  arguments, and objections.

14         Do you understand?

15         THE DEFENDANT:  I understand.  But that is what I told

16  the court last year, that I will remain passive in the court

17  during the trial.

18         But there is another possibility of questioning some

19  witnesses that I think might be beneficial to me at the trial.

20  Also, this possibility, that I am deliberating on it.

21         THE COURT:  All right.  So, as I said, you have the

22  right to do that, and Mr. Commissiong, who is a very well-

23  qualified attorney, can give you advice about that and you

24  could take his advice or not take his advice.  You can chat

25  with him or ignore him.  But what you cannot do is just decide

OALsABDc

```
1    that you want to do some of the questions and then he'll do
2    some of the questions.
3              THE DEFENDANT:  No, no.
4              THE COURT:  It would have to be you doing it by
5    yourself if you want to remain as a self-represented defendant.
6              Do you understand what I'm saying?
7              THE DEFENDANT:  I understand.
8              THE COURT:  So, let's say that during the course of
9    the trial you decide that you want to question some witnesses
10   and you're talking to him and he's giving you very good ideas.
11   And you say to yourself, well, maybe it would be a good idea
12   for him to start asking these questions or making objections.
13   Well, once he starts that, then he becomes your lawyer, and you
14   lose your right to be self-represented.
15             Do you understand that?
16             THE DEFENDANT:  We did go over this on the last, at
17   the last conference.  You explained to me vividly that anyone
18   who takes a position, that's it.  If they, in some ways,
19   standby lawyers and they take position of asking even one
20   question, then they take the lead, your Honor.
21             So, I understand it.  I would never, you know, I would
22   never mislead the court.  This is what I told the court that I
23   am going to, you know, kind of remain passive in this case, or
24   maybe even if I participate next week, that's up to me.
25             But what is clear for me that I will tell the court,
```

OALsABDc

1    that I told the court before, that they are not going to

2    participate in this case.

3              THE COURT:  OK.  And I have to, even though you made

4    that very clear, very, very clear, I need to remind you of your

5    rights because, under our Constitution, it is very, very

6    important that you understand your rights.

7              Finally, I must remind you that if you use the power

8    of self-representation to deliberately engage in serious and

9    obstructionist misconduct, you will lose the right to represent

10   yourself and a lawyer will be appointed to present your

11   defense, even if you do not want a lawyer.

12             Now, I'm not saying that that will happen.  You have

13   been a perfect gentleman every time that you've been in the

14   courtroom.  But if you should engage in any form of misconduct

15   which undermines the orderly proceeding of the trial, then you

16   may lose that right to be self-represented.  That's in

17   accordance with *Faretta v. California*, 422 U.S. 806, 834, n.46

18   (1975).  You must follow the rules of courtroom protocol and

19   maintain proper decorum.  You must, for example, follow the

20   rules of evidence and obey any ruling that I make or have made

21   in this case.

22             Do you understand?

23             THE DEFENDANT:  I understand.

24             THE COURT:  I previously explained to you the dangers

25   and disadvantages of proceeding without a lawyer to represent

OALsABDc

 1    you.

 2         I now reiterate that it is better for you to be

 3    represented by a lawyer.  You are at an extreme disadvantage if

 4    you represent yourself.  The prosecution, not only the lawyers

 5    that are sitting here, they have got dozens of lawyers back in

 6    their office who can help them during the trial.  And they have

 7    a great deal of experience.  They are experts in the law.  And,

 8    for me, you are putting yourself in a very dangerous position

 9    by going up against these very experienced lawyers by yourself

10    and not being represented by a lawyer.

11         THE DEFENDANT:  I understand that, that part, your

12    Honor.  I believe that for me taking the lead is putting me in

13    a disadvantaged position.  This is clear.

14         But I believe that, you know, this decision is lesser

15    evil.  That I explained to the court before, your Honor, I have

16    never explained to you reasons why I've made this decision

17    because of you, you know, you asked me about aliases.  And that

18    is something that is clear to me, that I have, you know, I have

19    a lot of reasons behind this -- this decision, and I never tell

20    the court.  I just keep it to myself.  Maybe I just keep it to

21    myself.  This is maybe, you know, just speaking without

22    knowledge, people might accuse me of speaking without knowledge

23    or, you know, I'm kind of a maniac or something.

24         Something is clear to me that you, your Honor, you

25    have treated me well.  I came to you here three times before

OALsABDc

```
1   changing the lawyers.  I told you before about the lawyer, that
2   we just come here again, because this is what I know, that
3   someone of my status will never get any legal service from the
4   public attorneys.
5           Maybe if I might have financially capabilities of
6   having a private lawyer, there would be no problem.  But the
7   public attorneys, the public defenders, your Honor, they will
8   never represent me.  They will never give equal service.  They
9   are going to do things that might even, you know, physically
10  harm you.
11          This is something that I have observed, and this is a
12  decision that is a rational decision, your Honor.  But I have
13  never gone into the greater details of explaining why I made
14  this decision.   This is a lesser evil, your Honor.
15          THE COURT:  So, I respect your decision, but I do want
16  you to know that I disagree with you with regard to lawyers
17  that are appointed to represent you as opposed to lawyers that
18  you are paying.
19          Mr. Commissiong enjoys an excellent reputation in this
20  courtroom, and in the rest of the courthouse, for his expert
21  knowledge of the law and his very high quality of his advocacy.
22  And so you are not getting a lawyer that is less than.  If
23  anything, you are getting a lawyer who is more than, better
24  than others.  So just keep that in mind.
25          But based on our discussion, is it your intention to
```

OALsABDc

| 1 | continue representing yourself with the assistance of the |

1    continue representing yourself with the assistance of the

2    standby counsel?

3         THE DEFENDANT:  If you would allow me, your Honor, to

4    waive the right for the standby counsel, I will waive it.  But

5    before I tell you, I cannot do it.  This is my decision.

6         THE COURT:  OK.  All right.  Yes.

7         Do any of the attorneys have any other questions that

8    they would like me to put to Mr. Abdullah regarding the *Faretta*

9    rights?

10         MR. BRADLEY:  No, your Honor.

11         MR. COMMISSIONG:  No, your Honor.

12         THE COURT:  The government filed motions in limine on

13    September 23.  The court did not receive any response or

14    opposition to the government's motion from Mr. Abdullah.

15         Mr. Abdullah, did you receive a copy of the

16    government's motions in limine?

17         THE DEFENDANT:  Yes.  I apologize to the court for not

18    replying because I didn't have enough stamps to send.  I have

19    some objections to what -- to the motions, some objections, but

20    I didn't have stamps, you know, postal stamps to send the

21    letter to the court.  So this is the reason why I didn't reply.

22         THE COURT:  So you still have an opportunity to make

23    your objections, and certainly the easiest way would be to make

24    them, you saying, Mr. Commissiong's ability to communicate with

25    the court electronically.

OALsABDc

 1              Mr. Commissiong, are you aware of objections?

 2              I'm not asking for the specific objections, but are

 3      you aware of the objections that Mr. Abdullah has?

 4              MR. COMMISSIONG:  I am.

 5              THE COURT:  So, Mr. Abdullah, you can make those

 6      objections at this time.  There is no problem in your doing

 7      that.

 8              Mr. Commissiong, did you want to say something?

 9              MR. COMMISSIONG:  No.

10              THE COURT:  So would you like to make your objections

11      now?

12              THE DEFENDANT:  That was my, you know, that is -- I

13      wanted to make those objections now.

14              THE COURT:  OK.

15              THE DEFENDANT:  Yeah.

16              THE COURT:  So then I will hear you on your

17      objections.  If you could just go one by one.

18              THE DEFENDANT:  Your Honor, one of the objection is

19      prejudice.  For example, the government, they are going to

20      introduce some of Al Shabaab propaganda, graphic videos, that

21      they are going to show it to the jury.  That is going to

22      greatly affect the decision-making capabilities of the jurors.

23      Because, for example, according to my understanding, the

24      Al Shabaab, they are connected to the military wing.  So they

25      are using those videos as psychological mafia.  So the

OALsABDc

1  government also, they are using the same videos as

2  psychological, you know, to psychologically manipulate the

3  decision-making capabilities of the juries.

4        And I have -- I don't have much objection to the

5  propaganda videos, but the main that's -- and also are

6  connected with this case is, you know, there is a footage of a

7  suicide bomber that we should explore.  This footage, even

8  those who are exposed to -- exposed to the values, it stops

9  them if they look at it.  So they see videos, you know, they

10  jurors might, according to my assumptions, they will be

11  civilians.  It might greatly affect their psychological, and

12  also they could be prejudiced if they look at it.  It might

13  affect the decision-making when they have to make a verdict.

14  So they are going to manipulate the verdict.

15        Another objection in the same propaganda videos is the

16  Dusit, DusitD2, the footage of the propaganda Al Shabaab video.

17  This, I don't have much objection to this, but I want the

18  government to cut, I think, the first zero minute until, like,

19  I think, you know, there is a part that when the video starts,

20  there is a part that there is a shooting, there is people

21  running.  So I want them to cut that part.

22        I understand from where, you know, the reporter is

23  talking.  I don't care --

24        THE COURT:  So I just want to take these one by one.

25        In the first, your first complaint is that you feel

OALsABDc

1   that the Al Shabaab videos will inflame the jury, that it would

2   be -- the prejudice would be excessive to you.

3           Is that correct?

4           THE DEFENDANT:  That's correct.

5           THE COURT:  OK.  Now, you mentioned a specific part

6   where there is a suicide bomber.  Are you saying that you want

7   that cut out, or you want no videos all together?

8           THE DEFENDANT:  No.  There is two videos of the Dusit,

9   connected with the DusitD2 attack.

10          One video is not propaganda.  This one video is a CCTV

11  footage that was provided by the KN government.  This CCTV

12  footage is for the attack, suicide bomber exploding himself.

13  The government already produce it, so I want them to not

14  introduce this one.  Not to use it at all.

15          And also there is --

16          THE COURT:  OK.  Let's just take one at a time.

17          Are you saying, in that particular video, you want

18  them to cut out the suicide bomber or you don't want the video

19  all together?

20          THE DEFENDANT:  Because the video, all of it is five

21  minute, and all five minute is about the suicide bomber.  So I

22  don't want them to use it at all.

23          THE COURT:  OK.  So I want to ask the government

24  whether or not, indeed, it intends to use a video that depicts

25  a suicide bomber exploding himself.

1          MR. BRADLEY:  We do, your Honor.

2          And as the government explained in its motions in

3    limine, there really -- I think I understand Mr. Abdullah.

4    There are really two videos.  The first focusing on the CCTV

5    footage of the suicide bomber in the Dusit attack.  This is one

6    very limited piece that the government explained it intended to

7    offer.

8          One of the reasons why it is significant, your Honor,

9    is because the defendant, indeed, searched for leaked CCTV

10   footage of suicide bomber Nairobi almost contemporaneously with

11   the Dusit attack as it happened and then visited a website

12   describing how that video was leaked.

13         In many respects, corroborates the defendant's

14   involvement in knowledge of Al Shabaab's operations, including

15   the targeting of Americans.  And I believe the court in its

16   rulings, I think, very carefully balanced the potential

17   prejudicial effect and how, under Second Circuit law, videos

18   such as this are directly probative in cases involving

19   terrorism such as this.

20         THE COURT:  One moment, please.

21         (Pause)

22         Mr. Abdullah, then I understand that you object to a

23   portion of the video where there is an individual firing a gun

24   and people running, is that correct?

25         THE DEFENDANT:  Yeah, that is correct.

OALsABDc

1          There is Al Shabaab propaganda video that was released

2     by Al Shabaab that, from the beginning, there is gunshots and

3     people are running.  This part, I want them to remove this

4     part.  But about the American, anti-American sentiment, or the

5     sentiment that the reporter expresses, I don't care about this.

6     They can introduce.  But what I don't want is something that is

7     going to psychologically affect the jurors.

8          THE COURT:  And, so, I understand the government does

9     want to use that portion of the video, is that correct?

10          MR. BRADLEY:  Yes, your Honor.

11          THE COURT:  OK.  Do you have any other responses to

12     their motions in limine?

13          THE DEFENDANT:  It's -- there is another -- there is

14     another objection of using the CC-1 and the CC-2 and the CC-3.

15     These are the coconspirators that the government are intending

16     to introduce at the trial, their communication with each other.

17          Your Honor, I object to this because the first thing

18     that they have to prove is that they have to prove these people

19     are actually members of Al Shabaab.  So, if their names is not

20     known, they must prove that these people are connected with

21     Al Shabaab.  And using the statement against me, I think, your

22     Honor, goes against the hearsay...

23          THE COURT:  Rule.

24          THE DEFENDANT:  Yeah.  There is no way that it's not,

25     that we ever met, and this -- this statement is, the government

OALsABDc

1    submission that we exchange with each other, but the statement

2    that, for example, CC-1 and CC-3 exchange with each other or

3    the statement that the CC-1 and CC-2 exchanged with each other,

4    this is something that I would like, I would like to object to

5    the introducing.

6            THE COURT:  So, you're saying that you're objecting

7    because the government has not tied you to those individuals,

8    is that correct?

9            THE DEFENDANT:  Correction, your Honor.

10           It's not -- they are trying to connect me with them,

11   you know, from the beginning.  But what I'm trying to object is

12   that these people are not, first of all, they are not

13   convicted.  Also, they are not, they are not known.  No one

14   knows where they are, so using against me.

15           Also, for example, the Facebook that they are using

16   maybe, for example, if this Facebook using allegedly is fake

17   names or fake e-mails.  So this is something that they must

18   first, the main thing, they must first prove that these people

19   are members of Al Shabaab to use this statement against me.

20   This is something have to be, they must be convicted first.

21           Your Honor, give me one second, please.

22           (Defendant confers with standby counsel)

23           Your Honor, correction.

24           The government, when they say that the e-mail, the one

25   I sent, allegedly the Google search for the CCTV, they say that

OALsABDc

1   it was the same day of the attack.  But, actually, if you --

2   according to the evidence that the government has produced, it

3   was two days later.

4           And also, one thing that, the main thing that the

5   government, they have to do, is that they must -- you know,

6   they must prove before the court without a reasonable doubt

7   that those CC-1, CC-2, and CC-3 are actually members of Al

8   Shabaab.  The government, they have refused, you know, they

9   denied it.  They have refused to unclassify, the classified,

10  the names, even the names of those guys.  So, they don't even

11  know whether they are members of Al Shabaab, so how can they

12  use, you know, hearsay, the rules, against me, your Honor?

13          THE COURT:  So, because I did not receive any

14  objections from you, I issued an opinion on October 16.

15          My understanding is that you received that, correct?

16          THE DEFENDANT:  No, they just give me now.

17          THE COURT:  Oh, I see.

18          All right.  So I'm going to give you an opportunity to

19  read my opinion at this time.  We'll take a brief pause.

20          (Recess)

21          All right.  So, Mr. Abdullah, you have had the

22  opportunity to read my decision on the motions in limine dated

23  October 16 and have had the opportunity to discuss it with

24  Mr. Commissiong, and I am adhering to my decisions in that

25  order, having considered your arguments.

OALsABDc

1          The government also submitted proposed questions for

2     potential jurors, proposed jury instructions, and a proposed

3     verdict form.

4          Mr. Abdullah, have you received copies of these

5     submissions?

6          THE DEFENDANT:  Yeah.

7          THE COURT:  And I did not receive any response from

8     you.

9          Do you intend to respond to these questions for the

10    jurors?

11         THE DEFENDANT:  The main thing that I would like you,

12    the government to add to those questions is, you know, the

13    government, according to their motions to charge, is that they

14    are trying to portray this case as, like, an antisemitic trial.

15    So, I would like you to question the jurors whether they

16    support either side, you know, the Palestinian side or the

17    Israeli side, so to be fair.

18         THE COURT:  You want me to ask the jurors whether they

19    support Israel in general?

20         Because Israeli have a number of different opinions

21    about their politics.

22         THE DEFENDANT:  No.

23         I would like you to ask the question, neither of both

24    sides, I don't want them to -- the jurors who support the

25    Palestinian side or the jurors who support the Israeli side,

OALsABDc

```
1   they should not be -- they should not be jury on this trial.
2   Because this trial is portrayed, like, you know, the Jerusalem
3   will be Judaized, and the government, they are claiming that I
4   am one of the Jerusalem brigade.  This is what they are trying
5   to present before the trial.
6        So I want the court -- I know it's unusual, because
7   you are not supposed to judge people in that way, but this is
8   how they want to use the court, and I want the jurors to be
9   free from both sentiments.
10       THE COURT:  Are you saying that you want me to ask
11  whether jurors have a bias in favor of Israel or a bias in
12  favor of the Palestinians?
13       THE DEFENDANT:  That is correct.
14       THE COURT:  Does the prosecution have anything to say
15  on his claim that you are trying to portray him as an
16  anti-semite?
17       MR. BRADLEY:  I think we would strongly disagree with
18  that, your Honor.  I think from the motions in limine, I think
19  it's very clear that the case that the government intends to
20  put forth to the jury is that the defendant's actions were set
21  in the context of an Al Shabaab operation known as Operation
22  Jerusalem will never be Judaized, which was in response, by
23  something that Al Shabaab took as an initiative in response to
24  the decision in 2008 for the United States to relocate its
25  mission to Israel from Tel Aviv to Jerusalem.
```

OALsABDc

1        I don't believe Al Shabaab's statements, while

2    certainly making reference to Zionism, Crusaders, and also the

3    anti-American, yes, I believe would, I think, certainly be

4    hostile to the Jewish state.  But I think primarily the case

5    that the government intends to proceed on at trial is that the

6    defendant was part of a conspiracy with Al Shabaab to harm

7    Americans.

8        THE COURT:  Anything further, Mr. Abdullah, with

9    regard to questions for the jurors?

10        THE DEFENDANT:  That's the only thing.

11        THE COURT:  OK.  So, with regard to the proposed jury

12    instructions, what I would like you to do is to submit any

13    objections that you have in writing.  I will give you a

14    deadline for that shortly.  I'm not going to give you the

15    deadline today.

16        I will take under consideration your request with

17    respect to the questions that I will pose to the jury.  I'm not

18    making a ruling on that today.

19        MR. BRADLEY:  Your Honor, just to maybe, perhaps,

20    clarify a little bit.

21        In paragraph 40 of our proposed examination of

22    potential jurors, we do note that one of our proposed questions

23    to the court was essentially asking the jury pool that the case

24    relates to violent conflicts involving several regions and

25    countries that include Israel as well.

OALsABDc

```
 1              So, to the extent that Israel is one of many, you
 2     know, one of other considerations or factors or something that
 3     is going to be raised at trial, I do think we do mention it in
 4     our request to charge.  We certainly will take into
 5     consideration the defendant's proposed contribution as well.
 6              THE COURT:  Well, he has already made his argument.
 7              MR. BRADLEY:  Correct.  I understand that he may put
 8     something in writing in response to the court's deadline.
 9              THE COURT:  No, no.  I'm not asking for a written
10     submission with regard to the questions to the jury.  I'm
11     asking for a written submission with respect to the jury
12     instructions.
13              MR. BRADLEY:  Understood.
14              THE COURT:  So, if you have anything further to say
15     about the questions to the jurors, let me know now.
16              MR. BRADLEY:  No, your Honor.  Thank you.
17              THE COURT:  OK.  The government previously estimated
18     that the trial would last three weeks.
19              What is the government's current estimate?
20              MR. BRADLEY:  I think, your Honor, some of it will
21     depend on whether there is a defense case.  I think that two
22     and a half weeks is probably the best estimate from the
23     government's perspective, taking into account the court's trial
24     day.
25              One other scheduling question that the government had,
```

OALsABDc

1    just from our perspective in terms of witness travel, was we

2    were just not sure if the court was going to sit on election

3    day, November 5, just because it is a federal holiday.

4                   THE COURT:  Of course not.

5                   MR. BRADLEY:  Thank you, your Honor.  I just wanted to

6    clarify.

7                   So I think, based on that, we would be tracking toward

8    approximately two and a half weeks with an eye toward hopefully

9    getting it done quicker than that.

10                  THE COURT:  So trial is currently scheduled to begin

11   next Monday, October 28.

12                  During jury selection and jury deliberation, we will

13   go from 9:00 a.m. to 5:00 p.m. with a break between 1:00 and

14   2:00 p.m.  Although, depending on how things go during jury

15   selection, that might fall a little bit earlier, a little bit

16   later.  There will be a midday one-hour break during jury

17   selection.

18                  During the evidentiary portion of the trial, that is

19   the part of the trial where we will have witnesses and other

20   forms of evidence, we will be in session from 9:00 a.m. to

21   2:15 p.m., with a break from 11:15 a.m. to 11:45 a.m.

22                  I'm going to repeat that.

23                  Once we start the evidentiary portion of the trial, we

24   will go from 9:00 a.m. to 2:15 p.m., with a break from

25   11:15 a.m. to 11:45 a.m.

OALsABDc

1              Does either side request that the jurors be anonymous

2     and/or semi-sequestered?

3              MR. BRADLEY:  No, your Honor.

4              (Defendant confers with standby counsel)

5              Your Honor, I apologize.  The government, just given

6     the subject matter of the trial, I think the government would

7     at least respectfully request an anonymous jury.  In other

8     words, not using their names in open court during the jury

9     selection process.

10             THE COURT:  So, you're looking for anonymity, but not

11    for semi-sequestration?

12             MR. BRADLEY:  Correct.

13             (Defendant confers with standby counsel)

14             THE DEFENDANT:  Your Honor, I would like to clarify to

15    better the question that you just asked right now.

16             THE COURT:  You're saying you would like me to clarify

17    my question?

18             THE DEFENDANT:  Yeah, yeah.

19             THE COURT:  So, typically when a jury is selected, the

20    individuals who are part of the group of potential jurors,

21    that's known as the panel, have a member of my staff call them

22    out by name.  So they would say, Herminia Rodriguez, Matthew

23    Schwartz, etc.

24             But when you have anonymous jurors, you do not use

25    their name.  They simply are not mentioned and, essentially, we

OALsABDc

1   just go by number.

2           (Defendant confers with standby counsel)

3           THE DEFENDANT:  I don't have any --

4           Wait a minute.

5           (Defendant confers with standby counsel)

6           Your Honor, I would prefer to the court use their

7   names.

8           THE COURT:  Does the prosecution have anything to say

9   about that?

10          MR. BRADLEY:  I'm not sure I quite heard.

11          THE COURT:  He said he would prefer that names be used

12   for the jurors.

13          MR. BRADLEY:  The government wouldn't have any

14   objection to names being provided to the defendant and the

15   government during the jury selection, as long as they weren't

16   announced aloud in open court.

17          THE COURT:  So he is pointing out that you would

18   actually be able to see their names.  It is the public that

19   would not see their names or hear them.

20          THE DEFENDANT:  Can the government please give the

21   reason why they want it to be like that?

22          MR. BRADLEY:  Your Honor, we are happy to provide

23   briefing to the court on this issue, but given the subject

24   matter, the fact that this is a terrorism case, the fact that

25   the subject matter involves allegations that the defendant

OALsABDc

conspired with others to murder Americans and given the
sensitivity of the subject matter, we believe it would be
appropriate for the names to not be, at least, read in open
court, even if the defendant himself has access to the names.

THE COURT:  Anything further, Mr. Abdullah?

THE DEFENDANT:  Yeah.  Eventually they are going to
provide me with the names?  I'm going to get names?

THE COURT:  I'll be providing you with the names.

THE DEFENDANT:  You're going to provide them with the
names.  I am going to know their names?

THE COURT:  You will definitely know their names.

THE DEFENDANT:  So why they don't want you to announce
their names?

THE COURT:  So he was just saying that, given the
allegations in the case where you're accused of being involved
in a conspiracy to kill Americans, the sensitive nature of that
makes it preferable for us to have jurors whose names are not
known to the public, but who will be known to you.  That is the
argument that they are making.

Am I correct?

MR. BRADLEY:  Yes, your Honor.

(Defendant confers with standby counsel)

THE DEFENDANT:  Your Honor, I think their names,
according to my opinion, their names should be pronounced,
should be pronounced aloud before the court, before the public.

OALsABDc

1        But that decision should be on the jurors.  They

2    should be told your names are going to be pronounced before the

3    court.  If you want to be in this court, in this trial, then

4    it's up to you.  You know, so let that be their decision.

5        THE COURT:  OK.  So my decision is that I am going to

6    have an anonymous jury panel, given the nature of the case.

7        So, jury selection will not take place here in this

8    courtroom.  It's going to be in courtroom 23A.  That's Judge

9    Stein's courtroom.  The remainder of the trial will be here in

10   courtroom 15D.

11       We are going to seat 12 jurors and four alternates.

12       My law clerk is now going to hand out a jury pool

13   sheeting chart so that you will know where the members of the

14   panel will be seated.

15       So what you do not see here on the papers that were

16   just handed to you are Jurors 1 through 18.  They will be

17   seated in the jury box during the jury selection process.  That

18   will be a separate piece of paper.

19       What you do see here is how the potential jurors will

20   be seated in the benches of the courtroom.  So in the lower

21   left, you see Juror No. 19.  So that's that first bench on the

22   left, all the way on the left side.  That's where Juror No. 19

23   will be, and that bench will be filled through number 24.  But

24   then you see that there is a space in between that represents

25   the aisle, and then the next juror will be in the next bench to

OALsABDc

```
1    the right.

2              Any questions about the seating arrangement?

3              MR. BRADLEY:  No, your Honor.

4              THE DEFENDANT:  No.

5              THE COURT:  OK.  My next question, Mr. Abdullah, is

6    whether you will be participating in sidebar conversations.

7              What happens during jury selection is that sometimes I

8    will ask a question that may be sensitive, maybe it is not

9    appropriate for the individual to answer in public, and that

10   person needs to speak to me and the lawyers typically in

11   private.

12             Now, you're representing yourself, and so the question

13   is whether or not you would like to be included in those

14   private discussions.  Because we will have you come forward and

15   we will have, like, a huddle.

16             THE DEFENDANT:  Will the marshals, will the marshals,

17   according to the marshal protocol, the standard procedures of

18   marshals, will they allow me for me to come near you?

19             THE COURT:  I'm in charge here, not the marshals, so

20   it's my decision as to whether you are part of the huddle or

21   not.  And my decision is that you may be a part of that huddle.

22   The question is merely whether it's going to be taking place

23   here in the courtroom or in the robing room.

24             THE DEFENDANT:  The question is will the marshals

25   escort me?  Will the marshals available, will they escort me?
```

1          THE COURT:  So we have to figure out a way of doing it

2     so that the members of the public are not conscious of their

3     presence around you.  We have to do it in a way that is

4     discrete.  So, if you did participate, we have to figure out a

5     way for you to participate and not to have attention drawn to

6     the fact that there are marshals involved.

7          THE DEFENDANT:  I have no objection.

8          THE COURT:  So the question is, would you plan to

9     participate in those private conversations?

10          In other words, you have the option of staying in your

11     seat when the lawyers come up or coming up yourself.

12          THE DEFENDANT:  I'm going to get involved.

13          THE COURT:  OK.  I'm going to have to discuss with the

14     marshals how that will be arranged.

15          So I want to talk about the peremptory strikes.

16          Mr. Commissiong, have you explained peremptory strikes

17     to Mr. Abdullah?

18          MR. COMMISSIONG:  We have not had that discussion,

19     your Honor.

20          THE COURT:  OK.  So each side, after hearing the

21     answer from the potential jurors, has the opportunity to object

22     to a given juror.  Now, that objection could be based upon an

23     answer that shows that they are not qualified to be a juror.

24     So, for example, if an individual says, I have a very serious

25     disease, I cannot sit in a courtroom and listen to a trial,

OALsABDc

1    it's just not possible.  I will be in excruciating pain.  That

2    person has given a reason why they should be disqualified.

3            But a person might also give an answer that shows they

4    have bias on one side or the other.  A person could answer, I

5    want you to know that my husband is a prosecutor and I will

6    always side with the prosecution.  Or a person could say, I

7    come from the same country as Mr. Abdullah and I will always

8    side with somebody from my country.  Those types of answers

9    that show bias, those disqualify a person from serving as a

10   juror because a juror must be able to say, I'm going to be fair

11   and impartial.

12           So, during the first part of the jury selection

13   process, we will eliminate or discharge jurors that clearly are

14   disqualified to serve as jurors for one reason or another.  But

15   then you have an opportunity to reject jurors that you feel,

16   for whatever reason, are not appropriate for this case.  And

17   assuming that your reason does not violate the Constitution,

18   so, for example, you could not reject a juror because of their

19   race or religion or their gender, but you could reject a juror

20   because, sizing up the individual, you simply feel that that

21   person is not desirable for your case.  These are called

22   peremptory strikes.

23           So, for the defense -- rather, for the first 12

24   jurors, the government gets six peremptory challenges.  In

25   other words, they have the opportunity to reject six of the

OALsABDc

1    potential jurors, and you have the opportunity to reject ten of

2    the potential jurors.

3             Are you following me?

4             THE DEFENDANT:  I understand.

5             THE COURT:  Good.

6             Then we will have four alternate jurors.  Each side

7    gets two additional peremptory challenges.  In other words, two

8    additional people that you may reject for a reason that does

9    not violate the Constitution.

10            So, we are going to handle the peremptory strikes in a

11   way that is not typically done in this courthouse, so let me

12   explain.  We will start with the prosecution, and you can

13   exercise all of your strikes in the first round if you want to.

14   We will examine the first 12 eligible jurors.  Then the defense

15   will look at that group of 12 and decide whether to exercise a

16   peremptory strike with respect to that first group of 12.

17            Once each side has exercised their strikes of that

18   first 12, then we are going to take the next 12.  And, once

19   again, you can exercise as many strikes as you like in that

20   second group of 12.  So we will go back and forth until we get

21   12 jurors and four alternates.

22            Any questions?

23            MR. BRADLEY:  No, your Honor.

24            THE DEFENDANT:  No.

25            THE COURT:  OK.  So what I do want you to understand

OALsABDc

```
 1    is that, let us say in the first group of 12, the prosecution
 2    exercises four strikes, and then in the second group they
 3    exercise one strike and they still have a strike left, well,
 4    you cannot go backwards to the first or second group.
 5               Do you follow me?
 6               MR. BRADLEY:  Yes, your Honor.
 7               THE DEFENDANT:  Yes.
 8               THE COURT:  I would like to address additional
 9    questions and issues.
10               The government is directed to order daily transcripts.
11    I do not permit speaking objections during the trial.  And by
12    this, Mr. Abdullah, I mean, if you want to make an objection,
13    you may decide that you want to make an objection because you
14    feel that a rule of evidence has been violated.  You will state
15    objection, but you will not say the reason.  You will not say
16    this violates the rule against hearsay.  You merely say
17    objection.
18               Does everybody understand what I'm saying?
19               MR. BRADLEY:  Yes, your Honor.
20               THE DEFENDANT:  I understand, your Honor.
21               THE COURT:  If, for some reason, I cannot figure out
22    why you're making the objection, then I will have a sidebar
23    conversation.  But, most of the time, I will understand why
24    you're making the objection and I will say sustained or
25    overruled.
```

OALsABDc

1        Sustained means that I agree with the objection and an
2    answer will not be permitted from the witness.  And if I
3    overrule the objection, then the answer may go forward.  Or if
4    an answer has already been given, it would stand.  If an answer
5    has already been given before the objection and I sustained it,
6    then that is going to be stricken from the record.
7        Mr. Abdullah, I want you to know that you are not
8    required to wear prison clothing during the trial.  Most
9    defendants in this courthouse request that they be allowed to
10   use regular, non-prison clothes, such as a suit and tie or
11   similar clothing because, of course, you want to make the best
12   impression that you can on the jurors.
13       So I would grant your request, if you ask, that you
14   would like to wear non-prison clothing, and I could not enforce
15   you to wear prison clothing.  And so if you want to wear
16   non-prison clothing, you need to tell me because I have to
17   issue a written order to the prison directing that the
18   officials there allow you to come in regular non-prison
19   clothing.
20       Do you understand what I'm saying?
21       THE DEFENDANT:  I understand what you're saying.
22       THE COURT:  Do you have a decision on that?
23       THE DEFENDANT:  I would prefer a prison uniform, your
24   Honor.
25       THE COURT:  You understand that I'm not allowed to

OALsABDc

1    force you to wear the prison uniform?

2             You understand that, right?

3             THE DEFENDANT:  Yeah, I understand that part.

4             THE COURT:  And so it's your intention to be in the

5    courtroom wearing prison-issued clothing; is that correct?

6             THE DEFENDANT:  That's correct.

7             THE COURT:  I will find that the defendant knowingly

8    intelligently and voluntarily waived his right to request that

9    I issue a clothing order.

10            Now, if you should change your mind between now and

11   Thursday, then you would have to submit a written request.

12            Mr. Commissiong, you have a way of communicating with

13   Mr. Abdullah, don't you?

14            MR. COMMISSIONG:  The short answer is yes, your Honor.

15            THE COURT:  So he has a way of communicating with you,

16   is that correct?

17            MR. COMMISSIONG:  Yes, there is a way.

18            THE COURT:  And what is that way?

19            MR. COMMISSIONG:  We would schedule a call with the

20   MDC and they would bring him to the phone and we would speak to

21   him over the phone.

22            THE COURT:  OK.  So, if you change your mind, I need

23   to know by Thursday.  And if it's the case --

24            MR. COMMISSIONG:  Your Honor, just one thing.  If it's

25   amenable to your Honor, I would like to approach just briefly

OALsABDc

```
1    with just one member of the prosecution team for a sidebar.

2              THE COURT:  Is that agreeable to you, Mr. Abdullah,

3    that Mr. Commissiong approach me and that you remain seated

4    where you are?

5              THE DEFENDANT:  Will that change my decision?

6              Like, for example, where you say the lawyers, they

7    want to step forward.  That's it?

8              THE COURT:  So his speaking to me now would not make

9    any impact on your decision to be self-represented.

10             THE DEFENDANT:  I don't mind, your Honor.

11             THE COURT:  OK.  Please step up.

12             (At the sidebar)

13             MR. COMMISSIONG:  I didn't know if this is something

14   you want on the record in open court, but we've had a lot of

15   changes in terms of speaking with him that are no fault of

16   ours.

17             As your Honor knows, he chose to remain passive, which

18   he said at the previous conference.  And in choosing to remain

19   passive, there have been certain restrictions that he sort of

20   placed on our communications with him.  So we haven't been able

21   to meet with him in person.

22             THE COURT:  Are you saying that he is rejecting

23   communication with you?

24             MR. COMMISSIONG:  He has, yes.  I only mention it

25   because, with respect to the question regarding peremptories,
```

OALsABDc

```
 1    you asked if we had that conversation.  The restrictions that
 2    we have had have prevented us from going into many aspects of
 3    this trial, and I just wanted your Honor to know that being the
 4    case.
 5               THE COURT:  Well, he has stated that he wants to
 6    represent himself and --
 7               MR. COMMISSIONG:  Absolutely.
 8               THE COURT:  -- I stated to him that he can ignore you.
 9    Of course, that does not mean that you should not continue to
10    make attempts to contact him despite his decision to ignore
11    you.
12               MR. COMMISSIONG:  Yes, and we have had calls that have
13    been refused.  And we've been, you know -- I'm trying to sort
14    of still honor some sort of confidentiality.  But to the extent
15    that we have not seen him in person, it's not our doing.
16               THE COURT:  I understand.  I completely understand.
17               MR. COMMISSIONG:  Or even contact via letter.
18               THE COURT:  So I'm going to explain to him now that if
19    he changes his mind and he wants to wear civilian clothes --
20               By the way, do you know if he has civilian clothing?
21               MR.COMMISSIONG:  I do not.  We had that conversation
22    with him.  In fact, we had that conversation with him this
23    morning, just before coming here, and the decision he told your
24    Honor is what was explained to us.
25               THE COURT:  If he changes his mind, would you be able
```

OALsABDc

1   to provide him with clothing if he does not have it?

2          MR. COMMISSIONG:  We would.  We told him, you know,

3   that we do have...

4          THE COURT:  So I'm going to let him know that if he

5   changes his mind, he has to communicate with you by Thursday.

6   And that you, for this purpose only, may communicate with me on

7   that subject matter only.

8          MR. COMMISSIONG:  OK.

9          THE COURT:  And if he should decide, of course, that

10  he wants civilian clothing, you will provide it.

11         MR. COMMISSIONG:  OK.

12         THE COURT:  OK.

13         MR. COMMISSIONG:  Thank you, your Honor.

14         (In open court)

15         THE COURT:  Mr. Abdullah, if you change your mind and

16  you want to wear non-prison clothing, that means that on your

17  own initiative you're going to have to contact Mr. Commissiong

18  and communicate that to him, and you have to do that by

19  Thursday.

20         Do you understand?

21         THE DEFENDANT:  I understand, your Honor.

22         THE COURT:  And I don't know what clothing you have

23  other than what you're wearing.  But if you don't have the

24  clothing that you want to wear, you can let Mr. Commissiong

25  know what kind of clothing that you want to wear.  For example,

OALsABDc

1    you could say I would like to wear a button-down shirt with a

2    sweater.  Whatever it is that you would like to wear, you can

3    let him know, and he will provide the clothing.  But your

4    deadline is Thursday.

5            Do you understand?

6            THE DEFENDANT:  I understand, your Honor.

7            THE COURT:  OK.

8            THE DEFENDANT:  One thing is, you know, I cannot

9    groom, you know, like, comb my hair.  Because in the prison

10   where I am, they put me in high security, so they don't give us

11   something to comb.  So they can give us the clippers to cut the

12   hair.  You need a barber to cut, you know, to be look good.  If

13   I want to cut my hair, I'm just going to even look much worser

14   than I'm looking like now.

15           So the point is, I would like the judge, you know, the

16   court to issue an order for the prison to provide me even with,

17   like, a comb so that when I come here, I just comb my hair.

18           THE COURT:  What about a visit to the barber.

19           There is a barber in the facility, isn't there?

20           THE DEFENDANT:  No, they usually give us clippers.

21   Clippers, and you just cut your hair on your own.

22           You know, I understand, the solitary confinement,

23   there is no contact.

24           THE COURT:  So would you like to cut your own hair?

25           THE DEFENDANT:  I would love to cut my hair, but if I

OALsABDc

1    cut on my own -- you know, I cut my hair several times in the

2    prison.

3              THE COURT:  Right.

4              THE DEFENDANT:  They give us the clippers.

5              THE COURT:  Right.

6              THE DEFENDANT:  I have tried.  Your Honor, I look

7    miserable.  I look worse than I look like now.  But if I have a

8    barber who is going to cut my hair --

9              THE COURT:  Yes.

10             THE DEFENDANT:  -- it would be better.

11             THE COURT:  Mr. Commissiong, do you understand what is

12   available as far as hair?

13             MR. COMMISSIONG:  I think because of the restrictions,

14   he has no contact with anyone else in the facility.  So going

15   to a barber is impossible based on the restrictions.

16             I'm not -- those aren't restrictions that a request

17   from me, you know, can't surmount, so to speak.  I think the

18   government would have to get involved with that request.

19             THE COURT:  Is there a barber in the facility?

20             MR. COMMISSIONG:  There are people who do cut hair.  I

21   don't know if there -- I don't know that that is an official

22   barber at the MDC, but there are people who are allowed to cut

23   other people's hair.

24             THE COURT:  All right.  Well, he has the right to come

25   to court looking sharp, and I think that there is the potential

OALsABDc

```
 1    for him to be perceived as unkempt with his current hair style.
 2    So we have to figure out a way of him getting a haircut.
 3              I would like the prosecution to tell me by the end of
 4    the day how we're going to do that.
 5              MR. BRADLEY:  Yes, your Honor.
 6              THE COURT:  All right.  I am going to need from both
 7    sides a list of attorneys and paralegals who will be involved
 8    in the trial.
 9              I understand, Mr. Abdullah, that you don't intend to
10    have any attorneys or paralegals involved.  But if you change
11    your mind, you can let me know whether there will be attorneys
12    and paralegals.
13              I need a list of potential witnesses and other
14    individuals whose names might be mentioned during the trial,
15    and a list of businesses or entities that may be mentioned
16    during the trial, and a list of locations involved in the
17    trial.  I will read these lists to the potential jurors during
18    jury selection.  I'm going to ask them whether they know any of
19    these individuals or are familiar with any of the businesses.
20              So, Mr. Abdullah, I need that list by Wednesday.  So,
21    if you're going to provide a list, once again, you're going to
22    need to contact Mr. Commissiong for this purpose.
23              THE DEFENDANT:  I understand.
24              THE COURT:  So, the parties are responsible for
25    knowing how to operate the AV system in the courtroom.
```

OALsABDc

1          Mr. Commissiong, if you are going to assist with that

2     process, if Mr. Abdullah intends to submit any evidence that

3     requires the use of any of the technological equipment, I'm

4     going to call for you to be familiar with the system.

5          So, essentially, we would need a dress rehearsal from

6     both sides so that you are completely familiar with both sides,

7     so we do not have delays or glitches.

8          If there are any Wi-Fi or electronic device requests,

9     I need that by this Thursday.

10          Mr. Abdullah, have you received copies of the

11     government's trial exhibits and statements or reports made by

12     the government's witnesses or prospective witnesses?

13          THE DEFENDANT:  Your Honor, I have received all except

14     for the Friday, the one that was sent on the 18th.  That is

15     when I think I have a CD, but I did not have access because my

16     computer that I have in my cell, you cannot -- it has no CD

17     drive.  So I have to go to the law library to use the prison

18     computer to convert it to their hard drive.

19          I went on Saturday.  They got a computer crash.  The

20     computer was not functioning, so I could not -- I didn't see

21     it.  I didn't see the content of the CD.

22          THE COURT:  So you provided Mr. Abdullah with a CD

23     one?

24          MR. BRADLEY:  We provided on October 11, your Honor,

25     an initial set of exhibits and 3500 materials.  We then

OALsABDc

1    provided an updated substantially completed set of materials on

2    the 18th.

3              I did speak to Mr. Abdullah before the conference

4    today in the presence of standby counsel.  We are certain to

5    understand that there is this technical issue with one of the

6    computers that came up.  We are certainly happy to raise that

7    with the Bureau of Prisons' staff when we inquire about the

8    haircut capabilities as well.

9              THE COURT:  So, this is critical.

10             MR. BRADLEY:  Yes.

11             THE COURT:  We are starting trial in a week.  He needs

12   to be able to review those documents immediately.

13             MR. BRADLEY:  Correct.

14             THE COURT:  So I want to get an answer.  I want to get

15   a positive answer by the end of the day.  I want to hear that

16   they are going to ensure that they have working equipment so

17   that he can review all of the voluminous evidence.

18             MR. BRADLEY:  Yes, your Honor.

19             THE DEFENDANT:  One additional.

20             THE COURT:  Yes.  Access, of course, on more than one

21   day.  There is no way a person can assimilate all that

22   information in one sitting.

23             MR. BRADLEY:  Yes, your Honor.

24             I would just note that I believe Mr. Abdullah also

25   told me that he was able to view the initial set of exhibits on

OALsABDc

1    the 11th, so he has had access to these materials.  We'll just

2    make sure that the facilities continue to be equipped and any

3    tech issue that he identified is resolved.

4            THE COURT:  So, once again, Mr. Abdullah, to the

5    extent that you are having difficulties reviewing that

6    material -- and it's very important that you review the

7    material -- those difficulties should be communicated to

8    Mr. Commissiong.

9            THE DEFENDANT:  I understand, your Honor, but there is

10   one more problem with the computer.

11           You know, this computer before used to have, like, a

12   software, a TRULINCS.  We call it TRULINCS software that you

13   can access, you know, the U.S. Constitution and other previous,

14   you know, the cases that I must read.  But for almost a year

15   now this software was removed since I was here last year, your

16   Honor.  Last year, I mean the day, two days before Thanksgiving

17   I was here for waiving the right for the new counsel.  Since

18   that time until today, the software is not functioning, so I

19   cannot even read any laws in the computer.

20           THE COURT:  So did you have West Law, is that what

21   they gave you?

22           THE DEFENDANT:  Huh?

23           THE COURT:  There is a product called West Law.

24           THE DEFENDANT:  No, no, your Honor.  There is a room

25   in our unit that has a computer, and in this computer there is

OALsABDc

1    a TRULINCS, that there is a -- you can access the prison

2    information, for example, the warden's notifications, or you

3    can even read the United States Constitution in that computer

4    and also you can read the previous cases and stuff like that,

5    something that is connected with the legal.  I could not access

6    any of those until today.

7          THE COURT:  So are you saying that it's the equivalent

8    of a digital law library?

9          THE DEFENDANT:  That is correct.

10         THE COURT:  But you were not permitted to access that

11   until today?

12         THE DEFENDANT:  No.  If I want to go to law library,

13   they permit me to go.  In that law library, that computer, that

14   software or that program was removed.

15         So I try -- I spoke to people responsible and I spoke

16   to them about the computer.  They say they are willing to fix

17   it, but they never fix it, your Honor.

18         THE COURT:  So he has to have access to this basic

19   source material.  So, once again, I'm going to require that the

20   prosecution ensure that the BOP make these materials available,

21   because if they are not made available, I will grant a

22   continuance.

23         Understood?

24         MR. BRADLEY:  Yes, your Honor.

25         THE COURT:  By the morning of the first day of trial,

OALsABDc

1    the parties must produce copies of all exhibits they may

2    introduce at trial.  The court will accept digital copies.  For

3    any exhibits produced in paper format, please provide two

4    copies to the court.

5             One moment, please.

6             (Pause)

7             Are there any further applications?

8             MR. BRADLEY:  Not from the government, your Honor.

9             THE COURT:  And, Mr. Abdullah, when I use that word,

10   which you'll hear during the trial, I'll ask if a party has an

11   application.  That means request, do you have a request for the

12   court to do something.

13            Do you understand?

14            THE DEFENDANT:  I understand, your Honor.

15            THE COURT:  Did you want to say something,

16   Mr. Commissiong?

17            MR. COMMISSIONG:  Can I just have a moment with him?

18            THE COURT:  Yes.

19            MR. COMMISSIONG:  OK.

20            (Defendant confers with standby counsel).

21            Your Honor, standby counsel would like us to know

22   where you would like us to sit.  Do you want us to sit here in

23   counsel table?

24            I know in some proceedings gone by with standby

25   counsel, sometimes standby counsel have been in the gallery or

OALsABDc

1   seated right behind the defendant.

2           THE COURT:  Well, I think that it's more practical, to

3   the extent that you want to give advice, that you be seated

4   next to him.

5           MR. COMMISSIONG:  OK.

6           THE COURT:  And, of course, as I said before,

7   Mr. Abdullah, you can listen to what he has to say or ignore

8   him.

9           THE DEFENDANT:  I understand.

10          THE COURT:  OK.  So that brings our conference to an

11  end.  We will see you at 9:00 a.m. next Monday morning.

12          We will be getting a panel of 100 potential jurors,

13  and as a reminder, we will be in Judge Stein's courtroom, 23A.

14          Thank you.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25